143 T.C. No. 4

UNITED STATES TAX COURT

JOHN C. BEDROSIAN AND JUDITH D. BEDROSIAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12341-05.                    Filed August 13, 2014.

Ps invested in a Son-of-BOSS transaction through a partnership
that was subject to the Tax Equity and Fiscal Responsibility Act of
1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324. R issued an FPAA
with respect to the partnership; R included with the FPAA a notice
under I.R.C. sec. 6223(e), informing Ps of their right to opt out of the
TEFRA proceeding. The FPAA was properly mailed, but Ps claim
that they did not receive it within the time in which to file a timely
petition. Ps filed an untimely petition, which the Court dismissed; the
Court of Appeals for the Ninth Circuit upheld the dismissal. R also
issued a notice of deficiency (NOD) that duplicated the adjustments
in the FPAA and included additional adjustments. Ps filed a timely
petition with respect to the NOD. P moved for summary judgment
asking that we determine that we have jurisdiction over all of the
items in the NOD, including those that were included in the
previously issued FPAA.

Held:  The partnership items did not convert to nonpartnership items under I.R.C. sec. 6223(e)(2) because the partnership proceeding was ongoing at the time the IRS mailed the FPAA.

Held, further, the partnership items did not convert to nonpartnership items under I.R.C. sec. 6223(e)(3) because filing a petition with respect to an NOD is not substantial compliance with procedures for opting out of a TEFRA proceeding.

Held, further, the Secretary did not reasonably determine under I.R.C. sec. 6231(g)(2) that TEFRA did not apply to the partnership.

Held, further, we are bound by the Court of Appeals for the Ninth Circuit's prior holding that we lack jurisdiction over the partnership items in the NOD.

Richard E. Hodge and Steve Mather, for petitioners.

Melanie R. Urban and Janet Reiners Balboni, for respondent.

OPINION

BUCH, Judge:  This case combines a system for examining and litigating partnership controversies that differs from typical deficiency procedures with missteps by both the agency charged with administering this system and petitioners' representatives.  The confluence of these missteps ultimately deprives us of jurisdiction over the partnership items set forth in the notice of deficiency

that underlies this matter--a result mandated by both the statutory scheme and controlling precedent of the Court of Appeals for the Ninth Circuit, to which this case is appealable. But first, some background.

Background

I.     The Transaction

The underlying transaction in this case is what has come to be known as a Son-of-BOSS transaction, with this variant using foreign currency options. See generally Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007); Notice 2000-44, 2000-2 C.B. 255. The Bedrosians created two entities, JCB Stone Canyon Investments, LLC (LLC), and Stone Canyon Investors, Inc. (S corporation), which in turn formed a third entity, Stone Canyon Partners (Stone Canyon). On October 16, 2000, the Bedrosians timely filed Form 1040, U.S. Individual Income Tax Return, for 1999 in which they claimed large flowthrough losses stemming from the transaction through their interests in the LLC and the S corporation.

Because Stone Canyon had flowthrough entities as its partners, the small partnership exception of section 6231(a)(1)(B)(i)[1] did not apply, and Stone

---

[1] All section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice

(continued...)

Canyon was subject to the unified audit and litigation procedures of sections 6221-6234, commonly referred to as TEFRA.[2] These procedures affect not only the audit and litigation of a passthrough entity, but also the preparation of a passthrough entity's return.

The same day that the Bedrosians filed their return, Stone Canyon timely filed Form 1065, U.S. Partnership Return of Income, for 1999. On line 4 of Schedule B, Other Information, Stone Canyon answered "no" to the question "Is this partnership subject to the consolidated audit procedures of sections 6221 through 6233? If 'Yes,' see Designation of Tax Matters Partner below". Notwithstanding the "no" answer on line 4, Stone Canyon designated the LLC as its tax matters partner (TMP). Stone Canyon attached to its Form 1065 a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., identifying the LLC as being an "INDIVIDUAL" in response to the question "What type of entity is this partner?", even though the name of the partner was the LLC name. Stone Canyon identified the S corporation as an "S CORPORATION" in response to the same question on a second Schedule K-1.

---

[1](...continued)
and Procedure, unless otherwise indicated.

[2]TEFRA is shorthand for the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, sec. 1(a), 96 Stat. at 324.

II.   The Audit

The parties have spilled a great amount of ink on the subject of what transpired during the audit, most of which is irrelevant to the ultimate conclusions in this case.  Nonetheless, we summarize what transpired to provide context.

In September 2003 Revenue Agent Harold Jung mailed Mr. Bedrosian a letter informing him that the Internal Revenue Service (IRS) had selected his Form 1040 for 1999 for audit.  In the letter Revenue Agent Jung requested that Mr. Bedrosian consent to extend the period of limitations, which was set to expire in less than two months, on an enclosed Form 872, Consent to Extend the Time to Assess Tax.  On September 10, 2003, the Bedrosians submitted to the IRS Form 2848, Power of Attorney and Declaration of Representative, designating Richard E. Hodge, an attorney, and Linda Olson, a certified public accountant, as their representatives with respect to the examination of their Form 1040 for 1999.[3] Revenue Agent Jung did not request a Form 2848 with respect to Stone Canyon, the S corporation, or the LLC.

The Bedrosians submitted to the IRS the completed Form 872, in which they agreed to extend the period of limitations for assessment of their individual

---

[3]Notwithstanding being included on the Form 2848, it appears from the record that Mr. Hodge did not have any involvement in the audit.

income tax for 1999 to August 31, 2004. Revenue Agent Jung did not request a form extending the period of limitations for assessment of tax attributable to partnership items and affected items of Stone Canyon for 1999. The parties agree that the Form 872 was ineffective to extend the period of limitations for assessment of tax attributable to partnership items and affected items of Stone Canyon for 1999.[4]

The next month, for reasons unexplained in the record, the administrative files with respect to the audit were transferred from Revenue Agent Jung to Revenue Agent Deborah Smyth. By that time, the period set forth in section 6229(a), which is the minimum period within which to assess tax attributable to partnership items and affected items for Stone Canyon's 1999 tax year, had expired.[5] Revenue Agent Smyth was well aware of that fact. And while she believed after reviewing the administrative files that Stone Canyon was subject to the TEFRA procedures, she continued conducting the Stone Canyon audit by examining the Bedrosians' Form 1040 for 1999.

_____

[4]See sec. 6229(b)(3); Ginsburg v. Commissioner, 127 T.C. 75 (2006).

[5]See Rhone-Poulenc Surfactants & Specialties L.P. v. Commissioner, 114 T.C. 533 (2000). Stone Canyon's Form 1065 for 1999 was filed on October 16, 2000. The period described in sec. 6229(a) would have expired on October 16, 2003.

She also examined the Bedrosians' Form 1040 for 2000, which was filed on October 15, 2001. On their Form 1040 for 2000 the Bedrosians claimed a comparatively small net operating loss carryover from 1999 and a deduction for legal, accounting, consulting, and advisory fees (collectively, transaction fees).

At Revenue Agent Smyth's request the Bedrosians submitted to the IRS a second Form 872 for 1999, in which they agreed to further extend the period of limitations for assessment from August 31, 2004, to April 30, 2005. Also at Revenue Agent Smyth's request, the Bedrosians submitted to the IRS Form 872-I, Consent to Extend the Time to Assess Tax As Well As Tax Attributable to Items of a Partnership, for 2000 in which they agreed to extend the period of limitations for assessment of their income tax, including tax attributable to partnership items and affected items of Stone Canyon, to April 30, 2005.

In May 2004 Revenue Agent Smyth mailed a letter to Ms. Olson (with copies to the Bedrosians) offering the Bedrosians the opportunity to participate in a settlement. They chose not to participate. In November 2004 Revenue Agent Smyth mailed Ms. Olson a letter (with copies to the Bedrosians) acknowledging the Bedrosians' choice and requesting that they provide additional information with respect to the transaction. Enclosed with the letter was the IRS' fourth information document request. The letter stated: "Once we receive the

information, we will provide you with Form 4549-A, Income Tax Examination Changes (Audit Report), which will show the tax deficiency, any applicable penalties, and interest you owe. If you wish to agree to the determination, you will sign and return Form 870 (Waiver)."

Revenue Agent Smyth later participated in a conference call with IRS Office of Chief Counsel attorneys and the IRS Son-of-BOSS TEFRA coordinator to discuss "how to proceed with this case in order to disallow the net operating loss carryforward deductions claimed on Petitioners' Form 1040 for the 2000 tax year, in view of * * * [her] determination that the limitations period for issuing a notice of final partnership administrative adjustment (FPAA) for the 1999 tax year had expired." The TEFRA coordinator advised Revenue Agent Smyth that the IRS should issue an FPAA for 1999 in order to disallow the NOL carryforward deduction for 2000. Revenue Agent Smyth's understanding of the TEFRA coordinator's advice was "not that the Service would issue an FPAA for the 1999 tax year instead of the notice of deficiency * * * for the 1999 and 2000 tax years * * * [but] that the Service would issue an FPAA in addition to the notice of deficiency for the 1999 and 2000 tax years."

Revenue Agent Smyth called Ms. Olson and informed her that the IRS would soon issue a notice of beginning of administrative proceeding (NBAP) for

1999. Ms. Olson inquired as to why the IRS would issue an NBAP with respect to Stone Canyon for 1999 when Revenue Agent Smyth was in the process of issuing audit reports with respect to the Bedrosians' Form 1040 for that same year. Revenue Agent Smyth responded that "the NBAP was procedural and that the TEFRA examination would be 'opened and shut'."

On February 2, 2005, Revenue Agent Smyth mailed separate copies of the NBAP to Mr. Bedrosian as the sole managing member of the LLC and to him in his individual capacity. Revenue Agent Smyth did not mail a copy of the NBAP to Mr. Hodge or to Ms. Olson, presumably because the IRS did not request and did not have a power of attorney on file authorizing either of them to represent Stone Canyon, the S corporation, or the LLC. Also on February 2, Revenue Agent Smyth mailed Ms. Olson a letter stating in relevant part: "As promised, enclosed are copies of the proposed audit reports for the Bedrosians for their 1999 through 2002 tax years * * *. Besides using these for reference purposes, I would suggest that they also be checked for accuracy - given the large number of inter-related adjustments created by exam changes."[6] Revenue Agent Smyth enclosed in the letter Forms 4549-A for 1999 through 2002.

---

[6]It appears that Revenue Agent Smyth reviewed the Bedrosians' Forms 1040 for 2001 and 2002 for the limited purpose of making carryover adjustments arising from the adjustments for 1999 and 2000.

A few days later, Revenue Agent Smyth began drafting both an FPAA for Stone Canyon and a notice of deficiency for the Bedrosians. She completed the drafting of both the FPAA and the notice of deficiency the following day.

A series of correspondence followed. On February 15, 2005, Revenue Agent Smyth mailed Ms. Olson Forms 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, and corrected Forms 4549-A for 1999 and 2000; these related to the examination of the Bedrosians. On February 18, 2005, Ms. Olson mailed Revenue Agent Smyth a letter informing her that the Bedrosians had received the NBAPs and had forwarded them to her; the NBAPs related to the examination of Stone Canyon. Ms. Olson further informed Revenue Agent Smyth of a new address for Stone Canyon, the S corporation, and the LLC. In fact, those entities were not yet receiving mail at that new address. In the last paragraph of the letter, Ms. Olson wrote: "You mentioned that these administrative proceedings would basically be opened and shut. Are there * * * any more documents that need to be reviewed other than the closing of the proceedings? If so then I may need to prepare [p]ower of [a]ttorneys for each of them." Revenue Agent Smyth never responded to Ms. Olson's letter dated February 18, 2005, which her office received on February 22. However, Revenue Agent Smyth continued communicating with Ms.

Olson regarding the Bedrosians' audit. On March 29, 2005, Revenue Agent Smyth mailed Ms. Olson a letter (with copies to the Bedrosians) stating in relevant part:

> Enclosed you will find Form 4549-A, <u>Income Tax Examination Changes</u> (Audit Report) which shows the tax deficiency, any applicable penalties, and interest; explanations for the adjustments are provided on Form 886-A, <u>Explanation of Items</u>. To agree to the tax, penalties, and interest, you may sign the enclosed Form 870 (Waiver) and return to me at the above address. * * *
>
> If you do not agree with the tax, penalties, and interest shown on the Audit Report, a statutory notice of deficiency will be sent to you.

Then on March 30, 2005, Revenue Agent Smyth closed her case file with instructions to the IRS' processing unit to issue the notice of deficiency to the Bedrosians.

On April 8, 2005 (62 days after mailing the NBAPs), the IRS mailed a total of 14 copies of the FPAA for 1999 to three different addresses on file for the Bedrosians, Stone Canyon, the S corporation, and the LLC. The IRS did not mail a copy of the FPAA to Mr. Hodge or to Ms. Olson. In the FPAA the IRS made partnership-level adjustments the effect of which was to disallow the losses stemming from the transaction. The IRS enclosed with the FPAA a notice under section 6223(e) labeled "Untimely Notice Letter--TEFRA Proceeding is Ongoing"

informing the recipient that the IRS had failed to issue an NBAP within the time required (at least 120 days before the FPAA) and that the recipient could elect under section 6223(e)(3)(B) to opt out of the TEFRA proceeding. The IRS also enclosed with the FPAA Form 870-PT, Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts, and Form 4605-A, Examination Changes--Partnerships, Fiduciaries, Small Business Corporations, and Domestic International Sales Corporations, for 1999.

Eleven days later, on April 19, 2005, the IRS mailed the Bedrosians the notice of deficiency (with a copy to Ms. Olson) for 1999 and 2000 (2005 notice). In the 2005 notice the IRS made partner-level adjustments disallowing the flowthrough losses on the Bedrosians' Form 1040 for 1999. Because the Bedrosians owned 100% of the interest in Stone Canyon through their interests in the LLC and the S corporation , the adjustments in the FPAA and those in the notice of deficiency resulted in the disallowance of the same losses, the former at the partnership level and the latter at the partner level. The IRS made some additional adjustments in the 2005 notice, including computational adjustments and adjustments disallowing the NOL carryover and the transaction fees for 2000.

The IRS determined deficiencies, additions to tax, and penalties with respect to the Bedrosians' Federal income tax for 1999 and 2000 as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|-----------|-----------|
| 1999 | $3,498,882 | $134,781 | $1,392,553 |
| 2000 | 12,137 | -0- | 4,855 |

III.   Litigation History

On July 5, 2005, the Bedrosians timely filed a petition disputing the adjustments in the 2005 notice.  Respondent answered.  On August 30, 2005, the Bedrosians remitted $4,269,819 to the IRS.  They designated the remittance to cover the 1999 and 2000 deficiencies and estimated interest on those deficiencies. The IRS treated the remittance as a payment.

On June 30, 2006, almost a year after the Bedrosians had filed their petition, respondent moved to dismiss this case for lack of jurisdiction on the ground that the 2005 notice was invalid in that it consisted entirely of adjustments to partnership items or affected items.  Respondent now claims that he has "consistently taken the position that * * * [the] Partnership is subject to the TEFRA provisions of the Code."[7]  We held that we do not have jurisdiction over

---

[7]If, at the time the petition was filed, respondent believed that Stone Canyon was subject to the TEFRA procedures, he should not have waited almost a year to

(continued...)

the adjustments to partnership items or affected items that were listed in the notice

of deficiency but that we do have jurisdiction over the disallowance of the

deductions for transaction fees for 2000.  Bedrosian v. Commissioner, T.C. Memo.

2007-375 (2005 notice case).  The parties agreed that all of the adjustments for

1999 were partnership items or affected items.  See id., slip op. at 7.  We granted

respondent's motion to dismiss insofar as it related to the adjustments for 1999

and the NOL carryover for 2000 and denied the motion insofar as it related to the

transaction fees.[8]

On September 5, 2006, the IRS issued an affected items notice of deficiency

to the Bedrosians (2006 notice).  On November 30, 2006, the Bedrosians filed a

timely petition in response to the 2006 notice.  We held that we lacked jurisdiction

over that case, however, because the deficiencies had been paid and assessed

---

[7](...continued)
file a motion to dismiss for lack of jurisdiction.  See Internal Revenue Manual
(IRM) pt. 35.3.2.1(3) (Sept. 21, 2012) ("A jurisdictional defect should be raised in
a motion to dismiss for lack of jurisdiction as soon as the jurisdictional defect is
discovered and any evidence needed to support such a motion is acquired.  Field
attorneys should avoid waiting to raise such defects in the answer, stipulation or
motion under T.C. Rule 122 in order to ensure a prompt resolution of the case and
to avoid unnecessary work for the Tax Court.").  A similar provision was in effect
at the time the petition was filed.

[8]At that time neither party raised, nor did we consider, the possible
application of sec. 6223(e) or 6231(g).

before the issuance of the 2006 notice.  Bedrosian v. Commissioner, T.C. Memo. 2007-376 (2006 notice case), aff'd, 358 Fed. Appx. 868 (9th Cir. 2009).  In other words, there was no deficiency.

On May 1, 2007, the LLC, as the TMP of Stone Canyon, filed an untimely petition in response to the FPAA.  Both parties filed motions to dismiss, with the TMP alleging that the FPAA was invalid because it was not mailed to the proper address and respondent alleging that the petition was untimely.  We granted respondent's motion to dismiss the FPAA case for lack of jurisdiction.  We held that the FPAA was valid and that the petition was untimely.  Stone Canyon Partners v. Commissioner, T.C. Memo. 2007-377 (FPAA case), aff'd sub nom. Bedrosian v. Commissioner, 358 Fed. Appx. 868 (9th Cir. 2009).

The respective petitioners appealed the orders of dismissal for lack of jurisdiction in the 2006 notice case and the FPAA case and attempted to appeal the order in this 2005 notice case to the Court of Appeals for the Ninth Circuit.  The Court of Appeals affirmed the dismissals in the 2006 notice case and the FPAA case.  Bedrosian v. Commissioner, 358 Fed. Appx. at 869-871.  To the extent the Bedrosians sought to appeal the holding in this case, the Court of Appeals dismissed the appeal for lack of jurisdiction on the ground that we had dismissed this case only in part and that there was no final judgment from which an appeal

could properly be taken.  Id. at 870.  Notwithstanding that it dismissed the appeal, however, the Court of Appeals remarked about our jurisdiction in this case:  "But both parties concede that the 2005 notice of deficiency was invalid because it was issued while partnership proceedings were pending.  No assessment could possibly deprive the Tax Court of jurisdiction over that particular deficiency, because the Tax Court never had jurisdiction over 'such deficiency' in the first place."  Id.  We interpret this statement as meaning that the 2005 notice was invalid only insofar as it covered partnership items.

On February 2, 2010, the Bedrosians filed a motion for leave to file an amended petition in this case and lodged an amended petition raising a new theory, that "[t]he interests of justice require a finding that Petitioners' be deemed to have elected that the partnership items of * * * [the Partnership] be converted to nonpartnership items on or before April 19, 2005".  On June 1, 2010, respondent filed an objection to the Bedrosians' motion.

In June 2010 this case was assigned to a Special Trial Judge pursuant to section 7443A and Rules 180 and 183.  Because leave to amend a pleading shall be freely given, Rule 41, the Bedrosians' motion was granted, thus allowing the amendment.

Next the Bedrosians filed a motion for summary judgment arguing (1) that the Court has jurisdiction over all of the adjustments in the 2005 notice of deficiency and (2) that the adjustments for 1999 are barred by the statute of limitations. Along with the motion, the Bedrosians filed a memorandum of points and authorities in which they argued that the adjustments in the 2005 notice that relate to partnership items were converted to nonpartnership items because, they assert, the partnership items for 1999 were converted to nonpartnership items by operation of section 6223(e)(2) and the partnership items for 2000 (and alternatively for 1999) were converted to nonpartnership items through a deemed election under section 6223(e)(3) that was made by filing the petition in this case. The Bedrosians' motion for summary judgment did not address the transaction fees for 2000, which we previously held were neither partnership nor affected items. Bedrosian v. Commissioner, T.C. Memo. 2007-375. Respondent filed an objection to the Bedrosians' motion for summary judgment to which the Bedrosians replied.

The Special Trial Judge filed and served on the parties recommended findings of fact and conclusions of law (proposed report) pursuant to Rules 182(e) and 183. The proposed report concludes that "the petition is sufficient to effect an election of nonpartnership item treatment." The proposed report does not address

the Bedrosians' statute of limitations argument. Pursuant to Rule 183(c), respondent filed objections to the proposed report and the Bedrosians filed a response to respondent's objections. In accordance with Rule 183(c), this case was then assigned to a Judge of this Court.

While considering the issues addressed in the proposed report, the Court ordered the parties to file additional memoranda regarding the potential applicability of section 6231(g)(2). Under Rule 183(d), "[t]he Judge to whom the case is assigned may adopt the Special Trial Judge's recommended findings of fact and conclusions of law, or may modify or reject them in whole or in part, or may direct the filing of additional briefs, or may receive further evidence, or may direct oral argument, or may recommit the recommended findings of fact and conclusions of law with instructions." See also Rawls Trading, L.P. v. Commissioner, 138 T.C. 271, 284 (2012) ("[W]e are under an affirmative duty to investigate the extent of our subject matter jurisdiction."). More specifically, the Court inquired whether respondent reasonably determined that TEFRA did not apply to Stone Canyon for the years at issue. In short, section 6231(g)(2) provides that the TEFRA procedures do not apply to a partnership if the Secretary reasonably but erroneously determines, on the basis of the partnership's return, that the partnership is not subject to TEFRA. If section 6231(g)(2) applies, then a

partnership that should be subject to TEFRA will instead be subject to the deficiency procedures of subchapter B of chapter 63 of the Code (i.e., the normal deficiency procedures).

The parties filed opening and answering briefs addressing their positions as to whether section 6231(g)(2) applies under the facts of this case. Respondent argues that section 6231(g)(2) does not apply because the IRS did not determine that Stone Canyon was not subject to TEFRA and that, if the IRS had made such a determination, the determination would not have been reasonable. In contrast, the Bedrosians argue that section 6231(g)(2) applies because the IRS determined that the normal deficiency procedures applied, and that the IRS's determination was reasonable.[9]

This briefing turned into a sideshow. Respondent admitted to making erroneous statements on the record regarding what happened during the course of the examination, and the Bedrosians went on the offensive. In their answering brief, the Bedrosians accused respondent of taking "deliberately false and fraudulent actions and * * * [making] false and fraudulent representations to the

_____

[9]Notably, it appears that the Bedrosians' position regarding sec. 6231(g) would, in effect, undermine their statute of limitations argument. The effect of sec. 6231(g)(2) is to render the whole of the TEFRA provisions inapplicable to the partnership at issue. As a result, sec. 6229(b)(3), the linchpin of the Bedrosians' statute of limitations argument, would be inapplicable.

Court since the outset of this case." Respondent subsequently filed a response to the Bedrosians' allegations of fraud, in which respondent "apologize[d] to the Court and to Petitioners' Counsel for not clearly identifying and explaining the ostensible conflict between the Memorandum Brief and respondent's prior representations." The Bedrosians then filed a reply to respondent's response to the allegations of fraud, in which they contend that the "implausibility and incongruity of respondent's statements and actions with respect to respondent's current position, combined with respondent's previous misrepresentations, make the current version of the 'facts' impossible to believe." Ultimately, this sideshow has no bearing on this case.

Discussion

I. Summary Judgment

Summary judgment may be granted where the pleadings and other materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The burden is on the moving party (in this case, the Bedrosians) to demonstrate that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C.

73, 74-75 (2001). In considering a motion for summary judgment, evidence is viewed in the light most favorable to the nonmoving party. Bond v. Commissioner, 100 T.C. 32, 36 (1993). The nonmoving party may not rest upon the mere allegations or denials of his or her pleading but must set forth specific facts showing there is a genuine dispute for trial. Sundstrand Corp. v. Commissioner, 98 T.C. at 520.

II.     Conversion Under Section 6223(e)

The Bedrosians' motion for summary judgment focuses on section 6223(e). Section 6223(e) provides alternate rules for when the IRS fails to issue certain notices within certain time constraints. More specifically, the IRS is required to issue an NBAP at least 120 days before it issues an FPAA. Sec. 6223(d)(1). The failure to allow sufficient time between the NBAP and the FPAA does not invalidate either notice. Starlight Mine v. Commissioner, T.C. Memo. 1991-59 n.3 ("Petitioners also contend that the FPAA was invalid because not all the notice partners were sent copies of the FPAA. However, see section 6223(e) for a notice partner's rights in such a situation; there is no provision therein for invalidating an FPAA sent to the TMP."). Instead, the failure gives rise to statutory rights under section 6223(e). The specific remedy afforded to the taxpayer differs depending

on whether the proceeding is ongoing at the time the IRS mails notice to the taxpayer.  Compare sec. 6223(e)(2) with (3).

A.      Section 6223(e)(2)--Proceedings Finished

The Bedrosians first argue that their partnership items converted to nonpartnership items by operation of law under section 6223(e)(2).  Section 6223(e)(2) applies if, at the time the IRS mails notice to the taxpayer, the TEFRA proceeding has concluded.  The Code specifically defines what it means for the proceeding to have concluded:  either (i) the period within which to have filed a petition with respect to an FPAA must have expired with no petition's having been filed or (ii) a decision with respect to an FPAA proceeding that was actually brought must have become final.  Only if one those events has occurred will a partner's items be deemed converted to nonpartnership items unless the partner opts to be bound by the TEFRA proceeding.  Sec. 6223(e)(2).

Factually, neither of those events had occurred at the time notice was mailed to the partners of Stone Canyon.  The IRS mailed the NBAP and the FPAA 62 days apart, and at the time that either was mailed, the TEFRA proceeding was ongoing.  Therefore, section 6223(e)(2) simply could not apply.  The Bedrosians argue, however, that we should read a third test for the conclusion of a partnership

proceeding into section 6223(e)(2)--that the period of limitations for assessment has expired.

There is no support for this argument in the statute; moreover, it is logically unworkable. The Code is explicit regarding what causes a conversion under section 6223(e)(2), and there is no mention of a period of limitations. Moreover, the expiration of the period of limitations does not cause a conversion of partnership items to nonpartnership items under the other TEFRA provisions relating to the conversion of partnership items found in section 6231(b) and (c).

To the extent the Bedrosians ask us to read such a rule into the statute, we cannot do so. Congress writes the laws; we do not. And such a rule would make little sense. The period of limitations for one partner may be very different from that for another. If one partner is an unidentified partner, then section 6229(e) would hold open that partner's period of limitations until at least one year after that partner is properly identified, which may be longer than the periods of limitations of other partners.[10] Likewise, because section 6229 operates only as a

---

[10]Indeed, the unidentified partner rule may well apply to the Bedrosians in this case. The Bedrosians are not identified on the face of the partnership return, and there is nothing in the record to indicate that their identifying information was provided in accordance with the regulations under sec. 6223. See Taylor v. Commissioner, T.C. Memo. 1992-219. However, we need not decide this question.

minimum period of limitations, if one partner had a substantial omission of income on his personal return, then that partner's period of limitations would be held open beyond those of the other partners. See generally Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. at 533. Moreover, section 6226(d)(1) explicitly provides that the time and place for a partner to raise an affirmative defense relating to the period of limitations is in the TEFRA proceeding. Treating the expiration of the period of limitations as an automatic conversion would conflict with this provision. The rule the Bedrosians advocate would simply be unworkable.

In short, we agree with the proposed report's discussion of section 6229(e)(2) both for the reasons stated in it and those stated above.

B.    Section 6223(e)(3)--Proceedings Still Going On

The Bedrosians' alternative argument is that they made a timely election to have their partnership items converted to nonpartnership items under section 6223(e)(3). Like section 6223(e)(2), discussed above, section 6223(e)(3) applies when the IRS issues an NBAP or FPAA outside of the timeframe required by section 6223(d). In this case, the IRS issued the NBAP with respect to Stone Canyon less than 120 days before the FPAA, so this first hurdle is met. In contrast to section 6223(e)(2), section 6223(e)(3) applies only if the TEFRA proceeding is

ongoing at the time the IRS issues the notice. Again, as discussed above, the notices were mailed to the partners 62 days apart. When the NBAP was mailed, the FPAA had not yet been issued, so the period within which to petition for a review of the FPAA had not yet begun to run. And because the FPAA was mailed simultaneously to the TMP and to the Bedrosians, at the time the FPAA was mailed the period within which to file a petition from that FPAA had just begun. It certainly had not lapsed. Thus, the TEFRA proceeding was ongoing, so this hurdle is likewise met. In such a situation, a taxpayer has the same options as under section 6223(e)(2), but the manner of electing is reversed. Specifically, if a partner makes a timely election, the partner may opt out of the TEFRA proceeding by having his items converted to nonpartnership items. Sec. 6223(e)(3)(B). In the absence of an election, however, the partner remains bound by the TEFRA proceeding. Sec. 6223(e)(3) ("the partner shall be a party to the proceeding unless such partner elects").

The question for the Court is whether the Bedrosians made the election. The proposed report finds that such an election was made under the doctrine of substantial compliance; we conclude otherwise as a matter of law. We give due regard to the findings of fact in the proposed report, see Rule 183(d), and indeed,

we take no issue with those findings of fact. It is in the application of the law to those facts where we find error.

To opt out of the TEFRA proceeding under section 6223(e), the electing partner must make an election as follows:

>    (2) <u>Time and manner of making election</u>. The election shall be made by filing a statement with the Internal Revenue Service office mailing the notice regarding the proceeding within 45 days after the date on which that notice was mailed.
>
>    (3) <u>Contents of statement</u>. The statement shall--
>
>    (i) Be clearly identified as an election under section 6223(e)(2) or (3),
>
>    (ii) Specify the election being made (that is, application of final partnership administrative adjustment, court decision, consistent settlement agreement, or nonpartnership item treatment),
>
>    (iii) Identify the partner making the election and the partnership by name, address, and taxpayer identification number,
>
>    (iv) Specify the partnership taxable year to which the election relates, and
>
>    (v) Be signed by the partner making the election.
>
>    [Sec. 301.6223(e)-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6785 (Mar. 5, 1987).]

The Bedrosians focus on their petition as their purported election under this regulation. The petition, however, did not satisfy the criteria for making an election under section 6223(e)(3).

We begin with the fact that the petition was not filed within the time for making an election under section 301.6223(e)-2T, Temporary Proced. & Admin. Regs., supra. The regulation requires that the election be made within 45 days after the date on which the notice is mailed. Although it is unclear whether the "notice" refers to the NBAP or the FPAA, because the FPAA is the later notice in this case, we will presume the FPAA is the operative notice.[11] The petition was filed on July 5, 2005, 88 days after the mailing of the FPAA.

The petition also was not filed with the proper office for making an election under section 6223(e). The regulation requires that the election be filed with the office that issued the notice (we will presume "notice" refers to the FPAA). The petition was not filed with the office that issued the FPAA; indeed, it was not filed with the IRS at all. The petition was filed with this Court.

_____

[11] The current regulation clarifies that the FPAA is the operative notice, but that regulation became effective on October 4, 2001, for partnership years beginning after that date. See sec. 301.6223(e)-2(e), Proced. & Admin. Regs. A temporary regulation was effective for the partnership years at issue, and the IRS took the same position even before the final regulations. Field Service Advisory 1993, 1993 WL 1469668.

The petition also does not clearly indicate that it was an election under section 6223(e)(3). In fact, the original petition filed in this case did not indicate that the Bedrosians intended to make an election of any kind; this position was first raised by the amended petition, lodged 1,761 days after the IRS mailed the FPAA, which stated that the Bedrosians should "be deemed to have elected that the partnership items of Stone Canyon Partners be converted to nonpartnership items". Moreover, because the Bedrosians did not know of their eligibility to make an election and did not contemplate that they were making such an election, it is unsurprising that the original petition did not specify the nature of the election that was being made (in this case, nonpartnership item treatment).

Some of the requirements for making an election under section 6223(e) might, arguably, be satisfied by the petition. It identified the partner and the partnership, although it did not contain the partnership address or taxpayer identification number. The petition mentioned the years at issue in the deficiency case, which are the same years that would have been the subject of an election. And although not signed by the partner making the election, the petition was signed by counsel for that partner.

The Bedrosians argue that it would be "untenable" to hold them to the requirements of making a proper election because they had not received actual

notice within the 45-day period within which to make such an election. This amounts to rearguing the Stone Canyon Partners case that we already decided and that the Court of Appeals for the Ninth Circuit already affirmed. Stone Canyon Partners v. Commissioner, T.C. Memo. 2007-377. Actual notice is not the standard; the standard is whether the IRS met the requirements for sending proper notice. We already held that it did, and the Court of Appeals already affirmed our decision in that case.

Recognizing that the Bedrosians did not make a proper election, the proposed report turns to the doctrine of substantial compliance, correctly setting forth the standard. The proposed report states:

> The substantial compliance doctrine is a narrow equitable doctrine that courts use to avoid taxpayer hardship if the taxpayer establishes that he or she intended to comply with a provision, did everything reasonably possible to comply with the provision, but did not comply with the provision because of a failure to meet the provision's specific requirements.

Proposed report at 13-14 (citing Samueli v. Commissioner, 132 T.C. 336, 345 (2009), Sawyer v. Cnty. of Sonoma, 719 F.2d 1001, 1007-1008 (9th Cir. 1983), and Fischer Indus., Inc. v. Commissioner, 87 T.C. 116, 122 (1986), aff'd, 843 F.2d 224 (6th Cir. 1988)). The proposed report correctly notes that the manner in which the election is made is regulatory, not statutory, and thus strict compliance

is not required. Id. at 14-15. In doing so, however, the proposed report states that "the Court has found that the documents submitted in lieu of a formal election must 'evidence an affirmative intent on taxpayer's part to make the required election and be bound thereby.'" Id. at 17 (quoting Fischer Indus., Inc. & Subs. v. Commissioner, 87 T.C. at 122). But the proposed report does not address this affirmative intent requirement in its substantial compliance analysis.

The Bedrosians did not have the affirmative intent to make the required election; they had not received the FPAA or the notice under section 6223(e). Presumably they did not even know that such an election was available to them at the time. Indeed, elsewhere the proposed report acknowledges as much, stating that "petitioners raise a new theory [in their amended petition] that there was a constructive or deemed election converting all partnership items for 1999 and 2000 into nonpartnership items." If an election under section 6223(e) was a new theory in 2010 when the amended petition was filed, then it could not have been the Bedrosians "affirmative intent" in 2005 when they filed their initial petition.

The proposed report thoroughly strings together examples of substantial compliance, yet it does not address the common thread of intent. In the cited cases, the people who successfully invoked the doctrine of substantial compliance intended to make an election. Indeed, the first such case cited by the proposed

report is <u>Samueli v. Commissioner</u>, 132 T.C. 336, which involved a failed attempt to invoke substantial compliance, but even there the taxpayers were able to show intent. That TEFRA-related case involved a situation in which the taxpayers alleged that, when they filed an amended individual income tax return, they really intended to file an administrative adjustment request under section 6227. Their argument failed because "[t]he requisite intent needed to be present contemporaneously with the filing of the partner AAR, not later when petitioners believed it to be more advantageous to have had that intent initially." <u>Id.</u> at 345-346. Likewise here; the intent to make an election under section 6223(e) needed to be present at the time the purported election was made, not 1,761 days later and with the benefit of hindsight.

Another case cited in the proposed report also focused on intent, but phrased the standard a bit more expansively. In <u>Fischer Indus., Inc.</u>, the Court articulated the standard as one that is governed by intent, stating:

> "We have examined the cases as to what constitutes a statement of election under various provisions of the Internal Revenue Code and have found that, absent a formal election, a submitted return and its attached schedules must evidence an affirmative intent on taxpayer's part to make the required election and be bound thereby. Failure to manifest such intent has repeatedly resulted in taxpayer's alleged election being rejected." * * * [<u>Fischer Indus., Inc. v. Commissioner</u>, 87 T.C. at 122 (quoting <u>Atl. Veneer Corp. v.</u>

Commissioner, 85 T.C. 1075, 1082-1083 (1985), aff'd, 812 F.2d 158
(4th Cir. 1987)); citations omitted.]

In that case, the Court noted that an election can, in some situations be made on an

amended return, stating that "if the circumstances necessitating an election arise

after the filing of an original return, [the election can be made] as soon as

practicable on an amended return." Id. In the case before us, the purported

election does not appear on a return but on the petition filed in this Court. If we

were to apply the standard from Fischer in this case, we would ask whether the

Bedrosians' intent to elect out of TEFRA appeared on either the original petition

filed in this case or "as soon as practicable on an amended" petition. Again, no

such intent appears on the original petition. The Bedrosians first raised the notion

of an election under section 6223(e) at least 33 months after they became aware of

the FPAA.[12] In the interim, Stone Canyon and the Bedrosians had lost

jurisdictional arguments in both this Court and in the Court of Appeals for the

Ninth Circuit. This was not "as soon as practicable"; this was with the benefit of

hindsight. And an attempt to benefit from hindsight weighs against a finding of

---

[12]The 33 months is calculated from the time the petition was filed in this
Court with respect to the Stone Canyon FPAA until the date the amended petition
was lodged.

substantial compliance.  Taylor v. Commissioner, 67 T.C. 1071, 1077-1078 (1977).

Even if we look past the lack of intent, there is a lack of substantial compliance in the manner the election was made.  The proposed report cites various cases that found substantial compliance where a taxpayer made a footfault in making an election.  Such footfaults include making the election with the wrong IRS office, Hewlett-Packard Co. v. Commissioner, 67 T.C. 736, 748 (1977), omitting information, Sperapani v. Commissioner, 42 T.C. 308, 330-333 (1964), or making an untimely election, Estate of Chamberlain v. Commissioner, T.C. Memo. 1999-181, aff'd, 9 Fed. Appx. 713 (9th Cir. 2001).  In the various examples of substantial compliance cited in the proposed report, however, the taxpayers made isolated footfaults.  A taxpayer may well have intended to make an election, but as a result of an error or omission the taxpayer did not fully comply with the requirements to make an election.  In such a situation a taxpayer might be deemed to have substantially complied.  But aggregating footfaults eventually moves away from compliance, beyond substantial compliance, and all the way to noncompliance.  The Bedrosians did not submit the supposed election to the proper IRS office, did not include the necessary information, and did not make an election in the time allowed.  This cannot be said to be substantial compliance.

The proposed report concludes that "[f]ailing to treat the petition as an election where a reasonable fix can be made under the circumstances would lead to a harsh result which is well out of proportion to the omission. Without such a fix, petitioners would be denied their day in Court." Proposed report at 18 (citations omitted). The Bedrosians' day in court to challenge partnership items was available to them by filing a timely petition from the FPAA. If they did not receive notice, it was by operation of the last known address rule as implemented through TEFRA. While the result might be unfortunate, this is the way the TEFRA rules operate in this case. And the Bedrosians have already challenged whether the TEFRA notice was effective and lost, in both this Court and the Court of Appeals for the Ninth Circuit. It is not for us to create a remedy where none exists.

In sum, we conclude that the Bedrosians did not intend to make an election under section 6223(e)(3). Even if we look past their lack of intent, we conclude that their petition did not substantially comply with the requirements to make such an election. In so concluding, we do not disturb the findings of fact in the proposed report.

III.    Application of Section 6231(g)(2)

In an effort to explore options that even the parties had not considered, the Court ordered the parties to submit memoranda on the question of whether section 6231(g)(2) might apply in this case.  Under section 6231(g)(2), the TEFRA provisions do not apply to a partnership if the Secretary reasonably determines, on the basis of the face of the partnership return, that TEFRA does not apply.

A.    Application of TEFRA

In prior cases we have described the TEFRA procedures as "distressingly complex and confusing".  See, e.g., Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 92 (2012); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. at 539-540.  It can even be complex and confusing to determine whether a partnership is subject to TEFRA.

The TEFRA provisions begin with the presumption that TEFRA applies to any entity that is required to file a partnership return.  Sec. 6231(a)(1)(A).  But there is an exception for small partnerships.  A small partnership is any partnership having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner.  Sec. 6231(a)(1)(B)(i).  Implicit in this exception, a partnership will not be considered to be a small partnership if any partner during the taxable year is a "pass-thru

partner". Id.; Brennan v. Commissioner, T.C. Memo. 2012-187, 2012 WL 2740897, at *3; sec. 301.6231(a)(1)-1(a)(2), Proced. & Admin. Regs. A "pass-thru partner" is a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership, and includes disregarded entities such as single-member LLCs. See 6611, Ltd. v. Commissioner, T.C. Memo. 2013-49, at *62 n.29; Tigers Eye Trading, LLC v. Commissioner, T.C. Memo. 2009-121, 2009 WL 1475159, at *11; Rev. Rul. 2004-88, 2004-2 C.B. 165.

Stone Canyon was subject to TEFRA. Both partners of Stone Canyon were passthrough partners; as a result it did not qualify as a small partnership and was subject to the TEFRA procedures. Yet until the IRS issued its notices, and perhaps afterward, there was apparent confusion over whether TEFRA applied to the adjustments at issue.

B.    Section 6231(g)

Congress was aware of the problem of determining whether TEFRA applies, and it enacted section 6231(g) as part of the Taxpayer Relief Act of 1997, Pub. L.

No. 105-34, sec. 1232(a), 111 Stat. at 1023, in an attempt to address the problem.

Section 6231(g) provides:

SEC. 6231(g). Partnership Return To Be Determinative of Whether Subchapter Applies.--

(1) Determination that subchapter applies.--If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter applies to such partnership for such year but such determination is erroneous, then the provisions of this subchapter are hereby extended to such partnership (and its items) for such taxable year and to partners of such partnership.

(2) Determination that subchapter does not apply-- If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter does not apply to such partnership for such year but such determination is erroneous, then the provisions of this subchapter shall not apply to such partnership (and its items) for such taxable year or to partners of such partnership.

This provision was intended as a relief provision for the IRS in situations in which the IRS has difficulty determining whether a partnership is subject to TEFRA. The House Ways and Means Committee report makes this clear, stating, in part:

Reasons for Change

The IRS often finds it difficult to determine whether to follow the TEFRA partnership procedures or the regular deficiency procedures. * * * [T]he IRS might inadvertently apply the wrong

procedures and possibly jeopardize any assessment.  Permitting the IRS to rely on a partnership's return would simplify the IRS' task.

Explanation of Provision

The bill permits the IRS to apply the TEFRA audit procedures if, based on the partnership's return for the year, the IRS reasonably determines that those procedures should apply.  Similarly, the provision permits the IRS to apply the normal deficiency procedures if, based on the partnership's return for the year, the IRS reasonably determines that those procedures should apply

[H.R. Rept. No. 105-148, at 587-588 (1997), 1997-4 C.B. (Vol.1) 319, 909-910.]

As the committee report makes clear, Congress' goal in enacting section 6231(g) was to simplify the IRS' task of choosing between the TEFRA procedures and the normal deficiency procedures by permitting the IRS to rely on a partnership's return.  Paragraph (1) of section 6231(g) extends the TEFRA procedures to a non-TEFRA partnership where the IRS reasonably but erroneously determines that those procedures apply.  Paragraph (2) of section 6231(g) operates to make the provisions of TEFRA inapplicable to a TEFRA partnership where the IRS reasonably but erroneously determines that TEFRA does not apply.  By providing these alternatives, it is clear that Congress intended that the IRS would make one of two mutually exclusive determinations with respect to a partnership on the basis of the partnership's return:  either TEFRA applies or it does not.

C.    <u>Section 6231(g)(2)</u>

The parties agree that Stone Canyon is properly subject to TEFRA. As previously stated, section 6231(g)(1) operates to bring a non-TEFRA partnership within the scope of TEFRA; that section is clearly not applicable here. Section 6231(g)(2) has the opposite effect. It operates to take a TEFRA partnership outside the scope of TEFRA by making the provisions of TEFRA inapplicable to the partnership. The parties disagree whether section 6231(g)(2) applies here.

Section 6231(g)(2) applies to a partnership for a taxable year if three elements are met: (1) the IRS determined on the basis of the partnership's return that the TEFRA procedures did not apply to the partnership for that year; (2) the determination was reasonable; and (3) the determination turned out to be erroneous. This third element is not at issue. The parties agree that Stone Canyon is subject to TEFRA. Thus it follows that if the IRS had determined on the basis of the Stone Canyon return that TEFRA does not apply, then that determination would have been erroneous.

The parties dispute the first two elements of section 6231(g)(2). The Bedrosians argue that the "IRS Clearly Determined that the Normal Deficiency Procedures Applied in Our Case" and that "there is ample evidence of the reasonableness" of that determination. Respondent argues that the IRS "did not

determine by reference to the Partnership return that the normal deficiency procedures apply in this instance" and that "any determination that [the] TEFRA procedures did not apply to the Partnership would have been unreasonable as [a] matter of law." We address each of these elements in turn.

1.      A Determination That TEFRA Does Not Apply

The first element of section 6231(g)(2) is met in this case if, on the basis of Stone Canyon's 1999 return, the IRS determined that the TEFRA procedures did not apply. Neither the statute nor the committee report provides any guidance as to the meaning of the phrase "on the basis of a partnership return" or as to when the IRS is to make its determination. However, both the TEFRA and non-TEFRA provisions provide a clear indication of when the IRS has made a determination-- the notice that concludes the examination. In a TEFRA case this is the notice of final partnership administrative adjustment; in a deficiency case this is the notice of deficiency.

We have made clear, back to the earliest days of TEFRA litigation, that the FPAA is the IRS' determination. In Clovis I v. Commissioner, 88 T.C. 980, 982 (1987), we wrote:

> The FPAA is to the litigation of partnership items and affected items pursuant to the partnership audit and litigation provisions of section 6221 et seq., what the statutory notice of deficiency is to tax

> controversies before this Court that involve respondent's determination of a deficiency, i.e., it is the notice to affected taxpayers that respondent has made a final administrative determination for particular tax years. * * *

Inherent in the determination of partnership items is the determination that TEFRA applies to the partnership in which those items arose; if TEFRA did not apply there would be no FPAA and no partnership items.

In contrast, one might argue that the IRS determined at some earlier time that TEFRA did not apply. Undoubtedly, the IRS initially treated the examination underlying this case as though it was not a TEFRA examination. The Form 1040 was assigned to Revenue Agent Jung for examination. Shortly thereafter, the IRS requested that the Bedrosians extend their period of limitations, not that attributable to items of Stone Canyon. The Bedrosians provided a power of attorney with respect to their personal tax matters, not those of Stone Canyon. See sec. 301.6223(c)-1(e)(2), Proced. & Admin. Regs. (providing specific requirements for furnishing a power of attorney with respect to TEFRA proceedings); Internal Revenue Manual (IRM) pt. 8.19.6.5(2) (June 1, 2007) ("For a Form 2848 to cover both partnership items and nonpartnership items, the partner should state in the power of attorney that authority for both matters is granted to the representative."). The IRS then communicated with the Bedrosians'

representative about the examination, including providing proposed audit changes that related to items originating in the partnership. But none of this amounts to a determination. These events are part of the give-and-take of an ongoing examination.

To look to the actions within an ongoing exam to find a "determination" would be an unworkable rule raising any number of problems. This would arguably permit anyone to look behind the final notice (either FPAA or notice of deficiency) to try to argue that the IRS had, at some earlier time, determined that the opposite procedure applies. Looking behind the notice is disfavored. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974) ("As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations."). In making that inquiry, the Court would look to some undefined standard for what constituted such a determination. Moreover, it would leave open the question of which IRS employees have the authority to make such a determination. Section 6231(g) rests that power with the Secretary, but we can find no specific delegation of this authority.

In contrast, notices that conclude an audit, an FPAA or a notice of deficiency, have long been understood as determinations. Clovis I v. Commissioner, 88 T.C. at 982. The IRS has delegated the authority to issue them. See, e.g., Delegation Orders 4-8 (authority to issue a notice of deficiency) and 4-19 (authority to issue an FPAA). And the notices have the benefit of providing a clear demarcation of when a determination was made.

In this case, however, the IRS issued both notices: the IRS issued an FPAA for Stone Canyon on April 8, 2005, and a notice of deficiency to the Bedrosians making the same adjustments (plus additional adjustments) 11 days later. We believe the earlier notice controls.

Neither section 6231(g) nor the committee report explicitly addresses the possibility that the IRS might audit a partnership using both procedures. When Congress enacted the TEFRA procedures, it intended the normal deficiency procedures and the TEFRA procedures to be separate and distinct procedures, with the former governing nonpartnership items and the latter governing partnership items. Even the IRM describes the two procedures as "mutually exclusive". See IRM pt. 4.31.2.1.1(1) (June 1, 2004) ("[T]he TEFRA partnership rules and the deficiency procedures are mutually exclusive."). Nonetheless, the IRS occasionally follows both procedures in practice to protect the Government's

interests when it is unsure which of the procedures applies. See id. pt. 4.31.2.1.8(1) (June 20, 2013) ("These key cases are controlled as both TEFRA and nonTEFRA. This is done when it is unclear whether a key case is TEFRA or nonTEFRA to protect the government's interest.").

By implication, however, section 6231(g) makes it clear that only one determination can be made for the partnership. In other areas within TEFRA, a single partner can be removed from a TEFRA proceeding such that adjustments are made with respect to one partner while all other partners are bound by the TEFRA proceeding. See, e.g., secs. 6227(d)(1), (3), 6231(c)(2). In contrast, section 6231(g) addresses partnershipwide, not partner-specific, determinations. Both section 6231(g)(1) and (2) make this clear: if paragraph (1) applies, "then the provisions of this subchapter are hereby extended to such partnership" and if paragraph (2) applies, "then the provisions of this subchapter shall not apply to such partnership." (Emphasis added.) There is nothing in section 6231(g) to indicate that Congress intended to allow the IRS to determine that TEFRA applies to one partner in a partnership while simultaneously determining that it does not apply to another partner in the same partnership. Thus, we conclude that the IRS must make a single determination for the partnership.

In this instance, the IRS determined that TEFRA applies to the partnership. The FPAA was the first notice issued and clearly indicated that the IRS was taking the position that TEFRA applied to Stone Canyon. Because section 6231(g) requires a single, partnershipwide determination, the IRS could not thereafter determine that TEFRA did not apply to that same partnership. And, under the facts of this case, a determination that TEFRA did not apply to Stone Canyon would not have been reasonable.

### 2. Reasonableness

If the IRS had determined that TEFRA does not apply to Stone Canyon, that determination would not have been reasonable.

For section 6231(g)(2) to apply, the IRS must reasonably determine that the partnership at issue is not subject to TEFRA. The Code does not define what is reasonable for purposes of section 6231(g)(1) or (2). There is no indication that Congress intended the term "reasonable" to have any specific meaning, and so we give it its ordinary meaning. See Crane v. Commissioner, 331 U.S. 1, 6 (1947); Keene v. Commissioner, 121 T.C. 8, 14 (2003).

In determining the ordinary meaning of words, it is appropriate to consult dictionaries. See Nat'l Muffler Dealers Ass'n, Inc. v. United States, 440 U.S. 472, 480 n.10 (1979); Rome I, Ltd. v. Commissioner, 96 T.C. 697, 704 (1991). The

Random House College Dictionary 1100 (Rev. ed 1980) defines the term "reasonable" as: (1) "agreeable to or in accord with reason or sound judgment; logical"; (2) "not exceeding the limit prescribed by reason; not excessive"; (3) "moderate in price; not expensive"; (4) "endowed with reason"; and (5) "capable of rational behavior, decision, etc.". Webster's II New Riverside University Dictionary 980 (1984) similarly defines the term as: (1) "[c]apable of reasoning"; (2) "[g]overned by or in accordance with reason or sound thinking"; (3) "[w]ithin the bounds of common sense"; and (4) "[n]ot extreme or excessive".

These definitions are not inconsistent with the use of the term "reasonable" elsewhere in the Code. The use of that term that is the most analogous to the current situation can be found in the phrase "reasonable basis" when referring to the standard of reporting. See, e.g., secs. 6662(d)(2)(B), 6676, 6694(a)(2)(B); see also 31 C.F.R. 10.34(a) (2011) (setting forth the Circular 230 ethical standards regarding tax return preparation). Determining whether TEFRA applies to a particular partnership involves the application of the law (specifically, section 6231(a)(1)) to a set of facts (specifically, the information shown on the face of a partnership return). The reasonable basis standard of reporting involves the same type of inquiry. For that purpose, reasonable basis is defined as

a relatively high standard of tax reporting, that is, significantly higher than not frivolous or not patently improper.  The reasonable basis standard is not satisfied by a return position that is merely arguable or that is merely a colorable claim.  If a return position is reasonably based on one or more of the authorities set forth in § 1.6662-4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard even though it may not satisfy the substantial authority standard as defined in § 1.6662-4 (d)(2). * * * [Sec. 1.6662-3(b)(3), Income Tax Regs.]

Against this backdrop, we analyze whether a determination based on the Stone Canyon partnership return that TEFRA does not apply to Stone Canyon would have been reasonable.  Stone Canyon's Form 1065 for 1999 contained conflicting and necessarily erroneous information.  On one hand, Stone Canyon expressly reported that it was not subject to the TEFRA procedures by answering "no" to the question on line 4 of Schedule B, which asks:  "Is this partnership subject to the consolidated audit procedures of sections 6221 through 6233?  If 'Yes,' see Designation of Tax Matters Partner below".  Yet Stone Canyon designated a TMP.

Notwithstanding these inconsistencies, the Schedules K-1 that were included with and are part of the partnership return make it clear that the partnership must have been subject to TEFRA as a matter of law.  One of the Schedules K-1 listed an LLC as one of the members of Stone Canyon but then

identified the LLC as an individual. Another Schedule K-1 listed an S corporation as one of the members of Stone Canyon and identified it as an S corporation. The presence of any passthrough partner precludes the application of the small partnership exception of section 6231(a)(1)(B) and renders the partnership subject to TEFRA as a matter of law. Relying on the face of the partnership return, the only reasonable conclusion is that TEFRA applies to Stone Canyon.

The Bedrosians even acknowledged this point in one of the memoranda that they filed before the Court raised the issue of section 6231(g)(2). They stated: "It was clear from the Stone Canyon Partners' partnership returns that partners in Stone Canyon Partners were themselves pass-through entities. This makes Stone Canyon Partners subject to the TEFRA procedures <u>automatically</u>." Memorandum of points and authorities in support of petitioners' motion for summary judgment, at 15 (Nov. 30, 2010).

Because it would have been unreasonable to determine that TEFRA does not apply to Stone Canyon, we find that section 6231(g)(2) does not apply.

IV. <u>Law of the Case</u>

As discussed above, we conclude that no election was made under section 6223(e)(2) to opt out of the TEFRA proceedings regarding Stone Canyon. We also conclude that the IRS did not determine that TEFRA did not apply to Stone

Canyon (and if it made such a determination, it would have been unreasonable). In addition to these reasons, we must rule against the Bedrosians because we are bound by what the Court of Appeals for the Ninth Circuit has already decided in this case.

We previously held that we lack jurisdiction over the partnership items that were included in the notice of deficiency at issue here, which, in essence, the Bedrosians ask us to reconsider. But the Court of Appeals already agreed with this Court's determination that the notice of deficiency was invalid as to the partnership items. As the Court of Appeals put it: "[T]he Tax Court never had jurisdiction over 'such deficiency' in the first place." Bedrosian v. Commissioner, 358 Fed. Appx. at 870. The phrase "such deficiency" refers to the partnership items that the IRS included in the notice of deficiency; however, we still had jurisdiction over the nonpartnership items for 2000 (i.e., the transaction fees). As a result, the Court of Appeals dismissed the Bedrosians' appeal from our decision in T.C. Memo. 2007-375 because "there is no final judgment as to all claims." The Court of Appeals remanded the case for further proceedings concerning the taxable year 2000, and we received the mandate on February 1, 2010.

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent

stages in the same case." <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983). It has been recognized and repeatedly applied by this Court and by the Court of Appeals for the Ninth Circuit, <u>see, e.g.</u>, <u>United States v. Alexander</u>, 106 F.3d 874 (9th Cir. 1997); <u>Herrington v. Cnty. of Sonoma</u>, 12 F.3d 901 (9th Cir. 1993); <u>Pollei v. Commissioner</u>, 94 T.C. 595 (1990); <u>Dixon v. Commissioner</u>, T.C. Memo. 2006-190, and precludes reconsideration of an issue that has been decided in this case, <u>Thomas v. Bible</u>, 983 F.2d 152, 154 (9th Cir. 1993). The issues that a lower court is precluded from reconsidering "include those that were decided by the appellate court expressly or by necessary implication." <u>Pollei v. Commissioner</u>, 94 T.C. at 601 (citing <u>In re Beverly Hills Bancorp</u>, 752 F.2d 1334 (9th Cir. 1984)).

Following either the section 6223(e) approach advocated by the Bedrosians or the section 6231(g)(2) approach would require that we reconsider our prior opinion in T.C. Memo. 2007-375 wherein we held that we lack jurisdiction over the very same items over which the Bedrosians now ask us to find jurisdiction. Doing so would violate the law of the case. Following the section 6223(e) approach would have us find jurisdiction over the partnership items in the 2005 notice of deficiency; the Court of Appeals for the Ninth Circuit has already held that we do not have jurisdiction over those items. Following the section 6231(g)(2) approach would render the FPAA and the <u>Stone Canyon Partners</u>

proceeding a nullity; the Court of Appeals already upheld the validity of the notice that underlay that proceeding and affirmed our decision in that case. The law of the case doctrine precludes us from reconsidering these rulings.

It is worth noting that the Bedrosians raised their allegations regarding the IRS' muddled handling of this case in the Stone Canyon Partners FPAA case. They alleged two affirmative defenses to the adjustments in the FPAA. The first defense was that the FPAA was invalid because it was not mailed to the last known address. Their second affirmative defense was as follows:

> The Commissioner failed to properly conduct a partnership-level proceeding * * * and issued a Notice of Deficiency proposing adjustments to partners' returns less than one month after issuing the FPAA, in violation of law. As a result, even if the FPAA had been timely received, the premature issuance of the Notice of Deficiency proposing adjustments based on the FPAA would have misled the partnership and its partners into concluding that the procedures for obtaining judicial review of the Notice of Deficiency superseded and obviated the procedures for obtaining judicial review of the FPAA. Therefore, any purported adjustments made by Commissioner in the FPAA are of no force and effect * * *.

In this passage, the Bedrosians clearly alleged that the IRS "failed to properly conduct a partnership-level proceeding"; that the FPAA was "of no force and effect"; that the notice of deficiency issued to them individually could reasonably be construed as the method the IRS had selected to resolve the 1999 partnership items; and that the notice of deficiency issued to them individually

"superseded and obviated" the FPAA. Although the Bedrosians did not frame their argument using the terminology of section 6231(g)(2), their factual allegations are essentially the same factual allegations that they now advance to support their contention that this case should be governed by individual deficiency procedures. For whatever reason, the Bedrosians abandoned this theory and argued the last known address issue, which was rejected both by this Court and by the Court of Appeals for the Ninth Circuit. They cannot now collaterally attack what has become a final decision.

## Conclusion

The Bedrosians cannot use this deficiency proceeding to make a collateral attack because of the final decision in Stone Canyon Partners or the opinion of the Court of Appeals in their prior appeal in this case. Their arguments regarding sections 6223(e) and 6231(g) amount to just that. Moreover, their arguments fail on the merits. The Bedrosians' partnership items did not automatically convert under section 6231(e)(2), and they neither made an election under section 6223(e)(3) nor substantially complied with the procedures for making such an election. Regarding section 6231(g)(2), the IRS determined that TEFRA applied to Stone Canyon, as evidenced by the Stone Canyon FPAA. If the IRS had determined that TEFRA did not apply to Stone Canyon, that determination would

not have been reasonable because Stone Canyon had passthrough partners, which preclude it from falling within the small partnership exception.

To reflect the foregoing,

An appropriate order will be issued.

Reviewed by the Court.

HALPERN, GALE, HOLMES, KERRIGAN, LAUBER, and NEGA, JJ., agree with this opinion of the Court.

KROUPA, J.,[13] concurs in the result only.

GUSTAFSON and MORRISON, JJ., did not participate in the consideration of this opinion.

---

[13]Judge Kroupa retired on June 16, 2014.

HALPERN, J., concurring:  I have joined the majority's opinion and write separately only to address Judge Vasquez' complaint that we have denied the Bedrosians their day in court.  I do not believe that to be the case.  Judge Vasquez is the author of our Memorandum Opinion Stone Canyon Partners v. Commissioner, T.C. Memo. 2007-377, 2007 WL 4526512, aff'd, 358 Fed. Appx. 868 (9th Cir. 2009).  In that case, we disposed of two competing motions to dismiss for lack of jurisdiction.  One was made by JCB Stone Canyon Investments LLC (LLC), as tax matters partner (TMP) of Stone Canyon Partners.  The grounds for that motion were that the Commissioner had failed to issue a valid notice of final partnership administrative adjustment (FPAA) since he had addressed no copy to a proper address.  The Commissioner's competing motion was on the grounds that the petition was untimely.  We denied the TMP's motion and granted the Commissioner's motion.

In its untimely filed petition, the TMP stated that the adjustments proposed in the FPAA were "the same adjustments" proposed in the notice of deficiency on which this case is based.  The TMP assigned error to the FPAA and raised two affirmative defenses:  one, that the FPAA was not mailed to the proper address, and, two, as noted by the majority, see op. Ct. p. 51, that the Commissioner's

muddled handling of the case deprived the FPAA of any vitality. Only the first affirmative defense was advanced as a ground for the TMP's motion.

We first addressed the TMP's motion. It argued that the FPAA was invalid "because it was never mailed to the appropriate address, and as a result petitioner did not receive notice as required pursuant to the Code." We reviewed the rules governing the proper address for an FPAA and noted: "As is the case with a statutory notice of deficiency, the validity of a properly mailed FPAA is not contingent upon actual receipt by either the tax matters partner or a notice partner." Stone Canyon Partners v. Commissioner, 2007 WL 4526512, at *3. We then turned to determining whether any of the 14 FPAAs the Commissioner mailed to three different addresses were sufficient. The FPAAs were addressed variously to "Stone Canyon Partners, c/o John Bedrosian", "JCB Stone Canyon Investments, LLC, c/o John Bedrosian", "Stone Canyon Investors, Inc., c/o John Bedrosian", "John Bedrosian", and "Judith Bedrosian". We stated not once but twice: "By mailing FPAAs to multiple addressees at multiple addresses, respondent made a good faith effort to notify all affected parties of the partnership adjustments, thus satisfying the notice requirement of sec. 6223(a)." Id., 2007 WL 4526512, at *4. With respect to one of the addresses, to which FPAAs addressed directly to the Bedrosians were sent, we stated: "[That] address was a proper

address to which respondent could mail the FPAAs to the Bedrosians as individuals and as indirect partners of * * * [LLC] and * * * [Stone Canyon Investors, Inc.]."

On the basis of our finding that the section 6223(a) notice requirements were satisfied, we denied the TMP's motion and granted the Commissioner's motion that the petition filed almost two years after the FPAAs were mailed was untimely and, thus, invalid. See id. at *5. The Court of Appeals acknowledged the Bedrosians' assertion that they did not receive the FPAA at any address. Bedrosian v. Commissioner, 358 Fed. Appx. at 869. It held, however: "Because we determine that the IRS validly mailed the FPAA to the Bedrosians, we affirm the Tax Court's dismissal for lack of jurisdiction of their untimely petition." Id.

Because the Commissioner sent them an FPAA, the Bedrosians were "notice partners". See sec. 6231(a)(8). Consequently, upon the failure of the TMP to file a petition in response to the FPAA, either of them could have done so. See sec. 6226(b). Their opportunity for a day in court to contest the FPAA--which the TMP (effectively, the Bedrosians) in the petition conceded presented "the same adjustments" proposed in the notice of deficiency on which this case is based-- expired 150 days after the FPAA was issued. See id. They failed to meet that

deadline.  As one court has aptly put it in response to a due process challenge to a

period of limitations:

> While it is undeniably true that access to the courts and an opportunity to be heard are fundamental aspects of procedural due process, it is equally clear that the bar imposed by a validly enacted and reasonable statute of limitations does not deprive a suitor of his day in court in derogation of that clause.[5]  * * *  [First fn. ref. omitted.]

> [5]As one court has stated:

> Statutes of limitation have been part of the law of every civilized nation from time immemorial.  Since each sovereignty may organize its judicial tribunals according to its own notions of policy, it has been recognized since the early days of this republic that statutes of limitation are within the sovereign power of each state to enact. Such statutes, having the effect of denying any judicial remedy for the enforcement of an otherwise valid claim, are justified on grounds of policy and as statutes of repose "designed to protect the citizens from stale and vexatious claims and to make an end to the possibility of litigation after the lapse of a reasonable time." Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 58 S. Ct. 785, 82 L. Ed. 1224 (1937).  The legislative body, in enacting such legislation, may weigh the conflicting interests between one person's right to enforce an otherwise valid claim and another person's right to be confronted with any claim against him before the lapse of time has likely rendered unavailable or difficult the matter of obtaining or presenting proof.  Any balance of these conflicting interests which is not arbitrary or capricious is within the legislative authority and not subject to constitutional attack for lack of due process.  Hargraves v. Brackett Stripping Machine Co., 317 F. Supp. 676, 682-83 (E.D. Tenn. 1970).  * * *

Saffioti v. Wilson, 392 F. Supp. 1335, 1339 (S.D.N.Y. 1975).

Indeed, the very argument that the Bedrosians make here concerning the Commissioner's muddled handling of the case, the TMP raised in assigning error to the FPAA. Judge Vasquez' penultimate paragraph in his report in Stone Canyon Partners v. Commissioner, 2007 WL 4526512, at *5, reads as follows: "In reaching all of our holdings herein, we have considered all arguments made by the parties, and, to the extent not mentioned above, we find them to be irrelevant or without merit." While it is not clear whether he intended that bit of boilerplate to refer to arguments other than those made in support of the motions, the TMP's affirmative defense certainly raised the issue in the case.

Petitioners have had their opportunity for a day in court. Whether they actually received the FPAA is beside the point. All Congress required is that it be mailed to them at a proper address. Judge Vasquez found that it was. Stone Canyon Partners is a partnership-level case, and, for that reason, the partners do not, upon failure to file a petition in response to the FPAA, have the opportunity to sue for a refund, as they would if the case were a deficiency case. See sec. 7422(h); see also, e.g., McCann v. United States, 105 Fed. Cl. 120, 122 (2012),

aff'd, 2012 WL 6839761 (Fed. Cir. Nov. 27, 2012).  That is a legislative choice that we have no authority to mitigate.

GALE, HOLMES, BUCH, LAUBER, and NEGA, JJ., agree with this concurring opinion.

GOEKE, J., concurring:  I agree with the majority's reasoning on the merits of petitioners' arguments and accordingly concur in the judgment.  I write separately to critique its law of the case doctrine analysis and to discuss the implications of petitioners' failure to timely challenge the Stone Canyon FPAA.

The majority concludes that we may not find that we have jurisdiction over the partnership items in the 2005 notice of deficiency, "because we are bound by what the Court of Appeals for the Ninth Circuit has already decided in this case." See op. Ct. p. 49.  The majority goes on to state:

> We previously held that we lack jurisdiction over the partnership items that were included in the notice of deficiency at issue here, which, in essence, the Bedrosians ask us to reconsider. But the Court of Appeals already agreed with this Court's determination that the notice of deficiency was invalid as to the partnership items.  As the Court of Appeals put it:  "[T]he Tax Court never had jurisdiction over 'such deficiency' in the first place." * * * [See id.]

I do not agree that we are bound by the quoted statement.

The law of the case doctrine "ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case." Moore v. James H. Matthews & Co., 682 F.2d 830, 833 (9th Cir. 1982).  "A significant corollary to the doctrine is that dicta have no preclusive effect." Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703,

715 (9th Cir. 1990) (citing Ducey v. United States, 830 F.2d 1071, 1072 (9th Cir. 1987).

I acknowledge that the Court of Appeals for the Ninth Circuit apparently agreed with our initial decision that we lacked jurisdiction over the partnership items in the 2005 notice of deficiency, but it appears that the statement the majority quotes was dictum.  On appeal the Court of Appeals considered three Tax Court opinions:  (1) its dismissal for lack of jurisdiction of the Bedrosians' untimely petition challenging the 2005 FPAA; (2) its partial dismissal of the Bedrosians' petition challenging the 2005 notice of deficiency; and (3) its dismissal for lack of jurisdiction of the Bedrosians' petition challenging the 2006 affected items notice of deficiency.  The Court of Appeals affirmed opinions (1) and (3) but held that it did not have jurisdiction to review opinion (2), because it was not a "final decision".[1]  See Bedrosian v. Commissioner, 358 Fed. Appx. 868, 870 (9th Cir. 2009), aff'g T.C. Memo. 2007-376.

The case before us concerns our jurisdiction over the partnership items in the 2005 notice of deficiency (opinion (2) above).  The statement the majority quotes appears in the Court of Appeals' analysis of our dismissal of the

_____

[1]The Court of Appeals found that because we had only partially dismissed the Bedrosians' petition challenging the 2005 notice of deficiency, their appeal was interlocutory.

Bedrosians' petition challenging the 2006 affected items notice (opinion (3) above). The Court of Appeals concluded it could not review opinion (2) but in its analysis of opinion (3) suggested that it agreed with opinion (2). It is not clear whether the Court of Appeals' statement about opinion (2) was necessary to its holding on opinion (3). Consequently, it is unclear whether the statement precludes us from reconsidering our jurisdiction in this case.

The law of the case doctrine typically precludes a court from reexamining an issue it previously decided in the same case. See Moore, 682 F.2d at 833. We previously opined that we had no jurisdiction over the partnership items in the 2005 notice of deficiency. Consequently, the law of the case doctrine already binds us on the basis of our own opinion. I find it unnecessary and incorrect to determine whether it also binds us on the basis of the Court of Appeals' opinion.

Additionally, I find it worth noting that the Court of Appeals' affirmation of our dismissal of the separate Stone Canyon partnership case (holding that the FPAA was valid and that the petition filed in response to the FPAA was untimely) necessarily means that the partnership proceedings were complete as to partnership items and that the Commissioner was free to proceed to make assessments or determinations regarding affected items. The partnership item adjustments determined in the FPAA became final when the time for filing a

petition expired.  <u>See</u> sec. 6225.  And our dismissal of the partnership proceeding for lack of a timely filed petition prevents us in a partner-level proceeding from upsetting the FPAA adjustments.  <u>See</u> sec. 6226(h) (providing that if a petition challenging the adjustments in an FPAA is dismissed, "the decision of the court dismissing the action shall be considered as its decision that the * * * [FPAA] is correct").

As we stated in <u>Tigers Eye Trading, LLC v. Commissioner</u>, 138 T.C. 67, 89 (2012):

> Under the TEFRA procedures all partnership items, the proper allocation of those partnership items among the partners, and the applicability of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item are determined in a single partnership-level proceeding.  Sec. 6226.  The determinations of partnership items in partnership-level proceedings are binding on the partners and may not be challenged in subsequent partner-level proceedings.  <u>See</u> secs. 6230(c)(4), 7422(h).

PARIS, <u>J</u>., agrees with this concurring opinion.

VASQUEZ, J., dissenting: Our society has a longstanding and "'deep-rooted historic tradition that everyone should have his own day in court.'" Richards v. Jefferson Cnty., Ala., 517 U.S. 793, 798 (1996) (quoting 18 Charles Alan Wright et al., Federal Practice and Procedure, sec. 4449, p. 417 (1981)). "The opportunity to be heard is an essential requisite of due process of law in judicial proceedings." Id. at 797 n.4. This Court "has consistently and zealously guarded a taxpayer's right to his day in court, whenever there was a bona fide dispute between him and the Commissioner of Internal Revenue." Petersen v. Commissioner, T.C. Memo. 1977-4, 1977 Tax Ct. Memo LEXIS 439, at *6. We have recognized the importance not only to the affected taxpayer, but also to the public's confidence in the tax collection system that the opportunity for judicial review of bona fide disputes be protected. Id.

The opinion of the Court departs from these deeply ingrained principles by denying the Bedrosians their day in court.[1] I believe the result reached by the opinion of the Court is not only inconsistent with the interests of justice but is also the product of an erroneous view of the governing law.

---

[1] This Court previously held that we have jurisdiction over the transaction fees for 2000, see Bedrosian v. Commissioner, T.C. Memo. 2007-375, and the opinion of the Court does not disturb this holding.

The opinion of the Court devotes the bulk of its energy to arguing that sections 6223(e) and 6231(g)(2), two highly complicated provisions within TEFRA, do not apply in this case. See op. Ct. pp. 21-48. The opinion of the Court then goes on to conclude, seemingly irrespective of its prior discussion, that this Court must rule against the Bedrosians under the "law of the case" doctrine. See id. pp. 48-52. I respectfully disagree. I will first explain why the reliance of the opinion of the Court on the "law of the case" doctrine is misplaced. I will then show how section 6231(g)(2) operates to confer jurisdiction on this Court.

I.      Law of the Case

The "law of the case" doctrine is "part of a related set of preclusion principles that includes stare decisis, res judicata, and collateral estoppel." Gonzalez v. Arizona, 624 F.3d 1162, 1185 n.16 (9th Cir. 2010). These preclusion principles are all aimed at promoting the efficient operation of the courts. Id. They are distinguished, however, by the type or stage of litigation in which they separately apply. Id.

The law of the case doctrine generally precludes a court from "reconsidering an issue previously decided by the same court, or a higher court in the identical case." Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990) (citing Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988),

amended, 860 F.2d 357 (9th Cir. 1988)). For the law of the case doctrine to apply, "the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" Id. (quoting Liberty Mut. Ins. Co. v. EEOC, 691 F.2d 438, 441 (9th Cir. 1982)). A court may exercise its discretion to depart from the law of the case in three instances: "(1) the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the law has occurred; or (3) the evidence on remand was substantially different." Id.

As the opinion of the Court correctly notes, the Court of Appeals for the Ninth Circuit dismissed the Bedrosians' appeal in this case for lack of jurisdiction because we had not entered a final judgment as to all claims. See op. Ct. p. 49. However, the opinion of the Court then erroneously concludes that this Court "must rule against the Bedrosians because we are bound by what the Court of Appeals for the Ninth Circuit has already determined in this case." See id. p. 49. The opinion of the Court quotes the Court of Appeals' statement that "'the Tax Court never had jurisdiction over "such deficiency" in the first place.'" See id. p. 49 (quoting Bedrosian v. Commissioner, 358 Fed. Appx. 868, 870 (9th Cir.

2009)).[2] The opinion of the Court overlooks the fact that the Court of Appeals' statements in this case constitute dicta. See Md. Nat'l Bank v. Vessel Madam Chapel, 46 F.3d 895, 902 (9th Cir. 1995) ("Because the * * * [Court of Appeals for the Fourth Circuit] action was dismissed for lack of jurisdiction, the statement upon which * * * [the claimant-appellee] relies is dicta and therefore not persuasive."); United States v. Eccles, 850 F.2d 1357, 1365 (9th Cir. 1988) ("Because we lack jurisdiction to hear the defendant's appeal, any statements that we could make here as to the appealability after trial of the defendant's claims would constitute dicta.").

The law in the Ninth Circuit, in which an appeal of this case would lie, see sec. 7482(b)(1)(A), is absolutely clear that dicta do not have preclusive effect for

---

[2] The complete sentence from which the opinion of the Court extracts the quotation from the Court of Appeals' opinion reads as follows: "No assessment could possibly deprive the Tax Court of jurisdiction over that particular deficiency, because the Tax Court never had jurisdiction over 'such deficiency' in the first instance." Bedrosian v. Commissioner, 358 Fed. Appx. 868, 870 (9th Cir. 2009), aff'g T.C. Memo. 2007-376. This statement appears in the portion of the opinion dealing with the affected items notice issued in 2006 rather than in the separate section of the opinion dealing with the notice of deficiency issued in 2005. The exact meaning of the quoted statement is unclear, especially considering that in the previous paragraph of its opinion the Court of Appeals had expressly held that it lacked jurisdiction to consider an appeal with respect to the 2005 notice of deficiency because the appeal was interlocutory inasmuch as the Tax Court had dismissed the Bedrosian's challenge to the 2005 notice of deficiency only in part, "retaining jurisdiction" over certain issues reflected in the notice of deficiency. Id.

purposes of the law of the case doctrine, see Milgard Tempering, Inc., 902 F.2d at 715 ("A significant corollary to the [law of the case] doctrine is that dicta have no preclusive effect."); Ducey v. United States, 830 F.2d 1071, 1072 (9th Cir. 1987) ("Dicta is not given preclusive effect under the law of the case doctrine in this circuit."); Russell v. Commissioner, 678 F.2d 782, 785 (9th Cir. 1982) ("Because the res judicata discussion in our prior * * * decision was dicta, it is not part of the law of the case."). Accordingly, the opinion of the Court is simply mistaken that the Court of Appeals' statements in dicta bind us in this case.

The opinion of the Court also contends that our prior holding in this case binds us.[3] We held in our prior opinion that we do not have jurisdiction over respondent's adjustments for 1999 in the April 19, 2005, notice of deficiency because the partnership proceeding was pending at the time that notice was issued. See Bedrosian v. Commissioner, T.C. Memo. 2007-375, slip op. at 7. The opinion of the Court correctly notes that "[f]ollowing either the section 6223(e) approach advocated by the Bedrosians or the section 6231(g)(2) approach would require that we vacate our prior opinion", but then erroneously concludes that vacating our prior opinion would violate the law of the case doctrine. See op. Ct. p. 50.

_____

[3] Judge Goeke agrees with the opinion of the Court as to this point in his concurring opinion.

To the contrary, "'[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment.'" City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 888 (9th Cir. 2001) (quoting United States v. Houser, 804 F.2d 565, 567 (9th Cir. 1986)); see also Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").[4]  It is undisputed that we did not enter a final judgment as to all claims in this case.  See Bedrosian v. Commissioner, 358 Fed. Appx. at 870.  Therefore, we have the power to reconsider, modify, or rescind our prior opinion (and the accompanying interlocutory order).

The holding in our prior opinion that we lacked jurisdiction over the items in the notice of deficiency for 1999 was based on an agreement of the parties, which we accepted, that these items were either partnership items or affected items.  See Bedrosian v. Commissioner, T.C. Memo. 2007-375, slip op. at 7.  We did not at the time consider the possible application of section 6231(g)(2), nor did

---

[4] Where, as here, there is no Tax Court Rule on point, we consult the Federal Rules of Civil Procedure for guidance.  Rule 1(a); Davis v. Commissioner, T.C. Memo. 2006-272, slip op. at 5.

we have the affidavits of the IRS revenue agent and the Bedrosians' power of attorney (POA) with regard to the events that transpired during the course of the audit. The parties now dispute the characterization of the 1999 items, and it is most prudent for us to reconsider this issue on the merits. See, e.g., Rawls Trading, L.P. v. Commissioner, 138 T.C. 271, 284 (2012) ("[W]e are under an affirmative duty to investigate the extent of our subject matter jurisdiction.").

Lastly, we consider the Stone Canyon Partners proceeding. The opinion of the Court correctly states that "[f]ollowing the section 6231(g)(2) approach would render the FPAA and the Stone Canyon Partners proceeding a nullity". See op. Ct. pp. 50-51. But then the opinion of the Court suggests that both the law of the case doctrine and the collateral estoppel doctrine preclude us from reconsidering our ruling in that proceeding. See id. pp. 51-52. This is not so.

As previously stated, the law of the case doctrine precludes a court from "reconsidering an issue previously decided by the same court, or a higher court in the identical case." Milgard Tempering, Inc., 902 F.2d at 715 (emphasis added). The Stone Canyon Partners proceeding is not identical to the case before us. The parties might be related. There might be issues in common. But, unquestionably, it is not the identical case.

The collateral estoppel doctrine likewise does not apply because it is an affirmative defense which was not raised by either party in this proceeding.  See Rule 39; Taylor v. Sturgell, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense."); Kightlinger v. Commissioner, T.C. Memo. 1998-357, slip op. at 24 ("[W]e observe that because res judicata and collateral estoppel are affirmative defenses and neither was pleaded by petitioner, they are deemed waived.").  While this Court may raise collateral estoppel sua sponte, it is not obligated to do so.  Monahan v. Commissioner, 109 T.C. 235, 250-251 (1997).  "Sua sponte consideration of issue preclusion generally should be limited to circumstances where the parties are given an opportunity to address the applicability of the doctrine to a particular issue."  Id. at 251.  They have not been given that opportunity here.  And, regardless, I seriously question whether the requirements of collateral estoppel would have even been met.[5]

---

[5]  In Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), aff'd, 904 F.2d 525 (9th Cir. 1990), we set forth five requirements that must be met before application of collateral estoppel in the context of a factual dispute:  (1) the issue in the second suit must be identical in all respects with the one decided in the first suit; (2) there must be a final judgment rendered by a court of competent jurisdiction; (3) collateral estoppel may be invoked against parties and their privies to the prior judgment; (4) the parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision; and (5) the controlling facts and applicable legal rules must remain unchanged from those in the prior litigation.  The opinion of the Court does not discuss these

(continued...)

Judge Goeke's concurring opinion relies on section 6226(h), which might, at first blush, appear to support its argument that the Bedrosians are precluded from contesting any of the adjustments in the FPAA as part of their deficiency case. Section 6226(h) generally provides that a court's dismissal of an action brought under the section is considered to be its decision that the FPAA is correct. However, no partnership action with respect to Stone Canyon was actually brought under section 6226. The TMP of Stone Canyon did not file a petition in response to the FPAA within 90 days under section 6226(a), nor did any other partner file a petition within 60 days after the close of the 90-day period under section 6226(b). The dismissal of a partnership action which was not properly brought under section 6226, as is the case here, has <u>no</u> preclusive effect. See <u>Cent. Valley AG Enters. v. United States</u>, 531 F.3d 750, 765-766 (9th Cir. 2008) ("TEFRA contains no provision stating that an FPAA has preclusive effect based solely on the failure to timely pursue TEFRA remedies and notwithstanding the lack of a Tax Court proceeding."); <u>see also</u> <u>A.I.M. Controls, L.L.C. v. Commissioner</u>, 672 F.3d 390, 392 n.2 (5th Cir. 2012) ("Because Royce Mitchell was not a tax matters partner of * * * [the partnership], he lacked authority to bring an action under * * * [section]

---

[5](...continued)
requirements, and it is far from clear whether the first, fourth, and fifth requirements have been met.

6226(a), and * * * [section] 6226(h)'s bar was not triggered by the district court's dismissal of his action.").

In short, there is no bar that prevents this Court from considering the merits of section 6231(g)(2). The reliance of the opinion of the Court on the law of the case doctrine is wholly inapposite. One of the underlying rationales for preclusion doctrines, such as law of the case, is to prevent litigants from taking the proverbial second bite at the apple. But that is not what the Bedrosians ask of us. They have yet to take their first bite.

## II.    The TEFRA Procedures

I now arrive at section 6231(g)(2), which presents an issue largely of first impression in any court. I thus believe it is appropriate to take a step back and look at how that section fits into the statutory scheme of TEFRA as a whole.

### A.    Background

"TEFRA's design is premised on the conceptual dichotomy of partnership and nonpartnership items."[6] Rawls Trading, L.P. v. Commissioner, 138 T.C. at

---

[6] Compare sec. 6231(a)(3) (defining the term "partnership item", with respect to a partnership, to mean "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level") with sec. 6231(a)(4) (defining the term "nonpartnership item" to

(continued...)

286. The tax treatment of partnership items must be resolved under the TEFRA procedures at the partnership level. Sec. 6221. The tax treatment of nonpartnership items must be resolved under the normal deficiency procedures at the individual level.[7] See secs. 6212(a), 6230(a)(2); Huff v. Commissioner, 138 T.C. 258, 263 (2012). The House conference report, H.R. Conf. Rept. No. 97-760, at 611 (1982), 1982-2 C.B. 600, 668, makes these rules explicitly clear:

> Existing rules relating to administrative and judicial proceedings, statutes of limitations, settlements, etc., will continue to govern the determination of a partner's tax liability attributable to nonpartnership income, loss, deductions, and credits. Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, except to the extent they become nonpartnership items under the rules, be raised in proceedings relating to nonpartnership items of a partner.

---

[6](...continued)
mean "an item which is (or is treated as) not a partnership item").

[7] There is a third category of items within TEFRA called affected items. An affected item, as its name implies, is a nonpartnership item which is affected by a partnership item. Sec. 6231(a)(5). There are two types of affected items: (1) items that require factual determinations to be made at the partner level (factually affected items), and (2) items that require merely a computational adjustment (computationally affected items). See Petaluma FX Partners, LLC v. Commissioner, 135 T.C. 581, 595 n.2 (2010). The normal deficiency procedures apply to factually affected items (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items). Sec. 6230(a)(2)(A)(i).

As the opinion of the Court acknowledges, Congress intended the TEFRA procedures and the normal deficiency procedures to be "mutually exclusive". See op. Ct. p. 43; see also Internal Revenue Manual (IRM) pt. 4.31.2.1.1(1) (June 1, 2004) ("[T]he TEFRA partnership rules and the deficiency procedures are mutually exclusive."). Merriam Webster's Collegiate Dictionary 768 (10th ed. 1996) defines the term "mutually exclusive" as "being related such that each excludes or precludes the other". In other words, the IRS' choice to audit a partnership return using the TEFRA procedures precludes the IRS from conducting that same audit under the normal deficiency procedures. Likewise, the IRS' choice to audit a partnership return using the normal deficiency procedures precludes the IRS from conducting that same audit under the TEFRA procedures. The rules Congress prescribed require the IRS to choose one, and only one, of the procedures.

However, in this case, like many before it, the IRS has chosen to apply both procedures. This practice has resulted in duplicative audits, confusion among the taxpayers, an unnecessary burden on the court system, and in this case a rare IRS

apology to the Court for a lack of consistency and candor.[8] See op. Ct. pp. 19-20.

That makes this case the appropriate vehicle to start enforcing the rules.

    B.    Section 6231(g)(2)

So how does section 6231(g) fit into this picture?  That section was

Congress' attempt to address the difficulties faced by the IRS in determining

which of the procedures to apply.  See H.R. Rept. No. 105-148, at 587-588 (1997),

1997-4 C.B. (Vol. 1) 319, 909-910.  The IRS' approach was (and still is) to

disregard the rules and apply both procedures when the IRS is uncertain as to the

correct procedures.  See IRM pt. 4.31.2.1.8(1) (June 20, 2013) ("These key cases

are controlled as both TEFRA and nonTEFRA.  This is done when it is unclear

whether a key case is TEFRA or nonTEFRA to protect the government's

interest.").  But Congress had a different approach in mind.

Congress' approach was to permit the IRS to rely on a partnership's return

and to make that return determinative of the audit procedures to be followed.  See

H.R. Rept. No. 105-148, supra at 587-588, 1997-4 C.B. (Vol. 1) at 909-910

("Partnership return to be determinative of audit procedures to be followed"); see

_____

    [8] We note that duplicative audits and litigation were some of the problems
Congress sought to resolve in enacting TEFRA.  See Adams v. Johnson, 355 F.3d
1179, 1186-1187 (9th Cir. 2004); Maxwell v. Commissioner, 87 T.C. 783, 787
(1986); H.R. Conf. Rept. No. 97-760, at 599-600 (1982), 1982-2 C.B. 600, 662-
663.

also sec. 6231(g) ("Partnership return to be determinative of whether subchapter applies"). If the IRS selects the correct procedures, section 6231(g) does not come into play. If the IRS selects the wrong procedures, but is reasonable in doing so, section 6231(g) treats the wrong procedures as the correct ones. If the IRS acts unreasonably in its determination, it does so at its peril and "possibly jeopardize[s] any assessment". H.R. Rept. No. 105-148, supra at 587-588, 1997-4 C.B. (Vol. 1) at 909-910; see also IRM pt. 4.31.2.1.1(1) (June 1, 2004) ("If the Service applies the wrong procedures, e.g., erroneously proceeds at the partnership level rather than at the partner level, or vice versa, barred deficiencies and/or refunds can result.").

### 1. Determination To Apply the Normal Deficiency Procedures

The record in this case clearly establishes that the IRS selected the normal deficiency procedures to audit Stone Canyon's return. The very first notice the IRS sent to the Bedrosians in this case was a letter informing them that their Form 1040, U.S. Individual Income Tax Return, for 1999 had been selected for audit. A Form 1040 is an individual income tax return. The letter did not mention that the IRS had commenced, or was even considering, a TEFRA audit of Stone Canyon's return. The IRS enclosed in the letter a standard Form 872, Consent to Extend the Time to Assess Tax, which is used to extend the period of limitations with respect

to nonpartnership items as part of an individual-level audit. See sec. 6501(c)(4). It does not extend the period of limitations with respect to partnership items or affected items (unless it has been specifically modified for that purpose--and it was not here). See sec. 6229(b)(3); Ginsburg v. Commissioner, 127 T.C. 75, 87 (2006).

The Bedrosians submitted to the IRS a Form 2848, Power of Attorney and Declaration of Representative, with respect to their individual income tax return for 1999, consistent with their understanding that the IRS had commenced an individual-level audit. At no point during the audit did the IRS request that a Form 2848 be executed for Stone Canyon, the LLC, or the S corporation.[9] Over

---

[9] Internal Revenue Manual (IRM) pt. 4.10.3.2.1.1(1) (Mar. 1, 2003) states:

> When a taxpayer obtains representation, the examiner will ensure that the authorization, Form 2848, Power of Attorney (POA), Form 8821, Tax Information Authorization (TIA), or a similar privately designed form, is properly executed. Service personnel are prohibited from disclosing tax information of a confidential nature to any unauthorized person. Upon receipt, the authorization must be date stamped and reviewed to ensure that it contains all required information. * * *

Had the IRS determined that the TEFRA procedures applied to Stone Canyon, the IRS should have at minimum secured a power of attorney from Mr. Bedrosian in his capacity as the sole managing member of the LLC (the TMP of Stone Canyon). See id. pt. 4.31.2.2.6 (1) (June 20, 2013) ("A TMP may appoint a power of attorney (POA) to represent the partnership before the Service and to perform all

(continued...)

the course of an audit lasting more than a year and a half, the IRS exchanged multiple communications with the Bedrosians and their POA, including information document requests, proposed settlement agreements (on Forms 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment), and proposed audit changes. All of these actions were taken at the individual level.

On brief respondent admits that its "revenue agent erred in soliciting an extension of the limitations period on Forms 872 and in soliciting a settlement agreement on Form 870" but argues with respect to the other events that "the revenue agent focused on Petitioners' individual income tax liability as a matter of practicality in conducting an examination of a Son-of-Boss partnership subject to TEFRA, not because the revenue agent believed that the Partnership was not subject to the TEFRA provisions of the Code."

The opinion of the Court goes along with this argument and holds that all of the actions that take place before the issuance of an FPAA or a notice of deficiency are the "give-and-take of an ongoing examination." See op. Ct. pp. 41-42. None of them matter. According to the opinion of the Court, the only action

---

[9](...continued)
acts for the partnership except for the execution of 'legally significant documents'.").

that matters for purposes of section 6231(g) is the final notice that concludes an audit. See id. at 40.

The opinion of the Court's backward-looking approach is contrary to both the statute and the legislative history. Neither the statute nor the legislative history provides any guidance as to the meaning of the phrase "on the basis of a partnership return". See id. The opinion of the Court does not attempt to come up with an appropriate definition. Instead, it simply reads this phrase out of the statute on the ground that "[l]ooking behind the notice is disfavored".[10] See id. at 42.

Under the opinion of the Court's approach, if the IRS issues an FPAA at the end of a partnership audit, then the IRS is said to have made a determination to apply the TEFRA procedures for purposes of section 6231(g), and vice versa, regardless of which procedures the IRS actually used throughout the audit. It matters not to the opinion of the Court whether the IRS even consulted the

---

[10] We note that there are exceptions to the rule that we generally do not look behind a notice of deficiency. An exception applies, for example, where there is "substantial evidence of unconstitutional conduct on respondent's part". See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974). We believe that another exception is appropriate for purposes of sec. 6231(g) because the statute and the legislative history specifically speak to the audit procedures to be followed by the IRS. See infra pp. 81-82.

partnership's return.  Such an approach is contrary to the basic principle of statutory construction that all words of a statute are to be given meaning.  See Market Co. v. Hoffman, 101 U.S. 112, 115 (1879) ("It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.").

This approach would also render meaningless any distinction between the TEFRA procedures and the normal deficiency procedures with respect to an audit. The legislative history to the statute is clear that a partnership's return is to be determinative of the audit procedures the IRS is to apply.  See H.R. Rept. No. 105-148, supra at 587-588, 1997-4 C.B. (Vol. 1) at 909-910.  Similarly, the heading of the statute states that a "[p]artnership return [is] to be determinative of whether subchapter applies."  Sec. 6231(g).  The subchapter in question is subchapter C of chapter 63, otherwise known as the "unified partnership audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA)". Rawls Trading, L.P. v. Commissioner, 138 T.C. at 272 (emphasis added).

If, as the opinion of the Court contends, the IRS does not make its determination until it issues an FPAA or a notice of deficiency, then the determination, even if made on the basis of a partnership's return, would have no bearing on the audit procedures the IRS is to apply.  An FPAA and a notice of

deficiency are the final notices that conclude an audit. The opinion of the Court's reading of the statute would turn it into a provision that speaks solely to the proper litigation procedures going forward. This is simply not a logical construction of the statute. See United States v. Koyomejian, 946 F.2d 1450, 1458 (9th Cir. 1991) ("The role of the courts is to give legislative enactments a sensible and logical construction whenever it is possible to do so through the use of ordinary tools of reasoning and statutory construction, rather than to adopt a sterile and unreasonable interpretation that Congress itself would clearly find unacceptable.").

I believe that Congress intended the IRS to make its determination at the outset of an audit by examining a partnership's return and the attached Schedules K-1, Partner's Share of Income, Credits, Deductions, etc. This Court reached the same conclusion in Harrell v. Commissioner, 91 T.C. 242 (1988),[11] for purposes of two very similar TEFRA provisions. The issue in Harrell was how to apply the now-repealed same share rule of the small partnership exception. The same share rule was satisfied if "each partner's share of each partnership item * * * [was] the

_____

[11] Z-Tron Computer Research & Dev. Program v. Commissioner, 91 T.C. 258 (1988), is a companion case to Harrell and was filed on the same day.

same as his share of every other item." Sec. 6231(a)(1)(B)(i)(II) (1982). We held

in Harrell v. Commissioner, 91 T.C. at 246:

> [F]or purposes of determining whether a partnership is a small
> partnership and whether the same share rule is satisfied, the test
> should be applied by determining whether the partnership reported
> more than one partnership item for the year and, if so, how those
> items were shared by each partner. This determination should be
> made by respondent as of the date of commencement of the audit of
> the partnership (but not necessarily on that date) by examining the
> partnership return and the corresponding Schedules K-1, and any
> amendments thereto received prior to this date. [Emphasis added.]

In reaching our holding in Harrell, we looked at the purpose of the small

partnership exception in the context of TEFRA as a whole. We explained that the

small partnership exception "serves the limited purpose of determining to whom to

issue a statutory notice or whether to issue an FPAA". Id. at 247. Because of that,

and for the sake of judicial economy, we would not for purposes of the same share

rule "permit a partner or representative of a partnership or respondent to claim a

result other than that identified in the return and Schedules K-1 as filed and

amended prior to the date of commencement of the partnership audit." Id. We

reasoned that "relying on the partnership returns and accompanying Schedules

K-1" would minimize "the extent to which respondent must interpret the

partnership agreement each year", id. at 248, and we concluded that said approach

"best serves the purpose of simplicity that is behind the partnership audit and litigation provisions", id.

We also looked at section 6233, which prescribes in general that where an entity files a return as a partnership, it will be subject to the TEFRA procedures even though it is later determined that the putative partnership is not a partnership for tax purposes. We found that for purposes of section 6233: "Congress mandated that the information on the tax return would be determinative of the procedures to be followed, even if the underlying facts later prove the return to be incorrect." Id. We concluded that the approach in Harrell with respect to the same share rule was "totally consistent with the approach mandated by Congress in section 6233, i.e., making the determination regarding the application of the TEFRA procedures on the basis of the partnership information return." Id. (emphasis added).

I believe that Congress intended the approach in Harrell to apply for purposes of section 6231(g). Section 6231(g) is similar to section 6231(a)(1)(B)(i)(II) (1982) (i.e., the same share rule of the small partnership exception) and section 6233, discussed above, in that all three provisions revolve around the IRS' selection of either the TEFRA procedures or the normal deficiency procedures by which to audit a partnership return. Moreover, for all

three provisions, Congress sought to make the information on a partnership's return determinative of the audit procedures the IRS is to apply.

Unlike the opinion of the Court's approach, the Harrell approach gives effect to the phrase "on the basis of a partnership return". Moreover, the IRS' determination would actually govern the procedures to be used throughout the audit, as Congress had intended. And under the Harrell approach, there is no question that the IRS made a determination, on the basis of Stone Canyon's return, to apply the normal deficiency procedures. See supra pp. 77-79; see also op. Ct. p. 41 ("Undoubtedly, the IRS initially treated the examination underlying this case as though it was not a TEFRA examination.").

### 2. Reasonableness

The second half of the inquiry under section 6231(g)(2) is one of reasonableness. The statute applies only if the IRS' determination to follow the normal deficiency procedures was reasonable. The opinion of the Court holds that "the only reasonable conclusion is that TEFRA applies to Stone Canyon." See op. Ct. p. 48. The opinion of the Court acknowledges all of the inconsistencies on Stone Canyon's return, but chooses to disregard them, looking solely at the attached Schedules K-1. Id. pp. 47-48. The opinion of the Court also chooses to disregard the IRS' lack of candor in this case, calling it a "sideshow". Id. pp. 19-

20.  I do not dismiss such conduct so lightly, especially where, as here, it has a direct bearing on one of the issues in this case--the question of reasonableness.

On December 1, 2004, during the audit, the IRS' revenue agent participated in a conference call with IRS Office of Chief Counsel attorneys and the IRS Son-of-BOSS TEFRA coordinator.  The revenue agent filed an affidavit in this case claiming that she wanted to discuss "how to proceed with this case in order to disallow the net operating loss carryforward deductions claimed on Petitioners' Form 1040 for the 2000 tax year, in view of * * * [her] determination that the limitations period for issuing a notice of final partnership administrative adjustment (FPAA) for the 1999 tax year had expired."  The revenue agent explains in her affidavit that two months later, the TEFRA coordinator advised her that the IRS should issue an FPAA for 1999 in order to disallow the NOL carryforward deduction for 2000.

Actually, though, the IRS wanted to disallow a $17 million loss deduction on the Bedrosians' 1999 return, an amount that dwarfs the approximately $80,000 NOL carryforward deduction in comparison.  The problem was that the IRS had

been using the wrong audit procedures for more than a year and had allowed the correct period of limitations to lapse.[12]

On February 1, 2005, approximately a year and a half into the audit, the IRS' revenue agent called the Bedrosians' POA and told her that the IRS would soon issue an NBAP for 1999. The POA inquired as to why the IRS would issue an NBAP (a partnership-level notice) when the IRS was in the process of issuing audit reports with respect to the Bedrosians' individual income tax return for 1999. The revenue agent responded that "the NBAP was procedural and that the TEFRA examination would be 'opened and shut'." The POA in all likelihood had no idea what the revenue agent meant by that.

The very next day the revenue agent mailed the NBAP to the Bedrosians but not to their POA. The revenue agent instead mailed the POA proposed individual audit reports for 1999. Approximately two weeks later, the POA mailed the revenue agent a letter stating that the Bedrosians had forwarded the NBAP to her and inquiring whether the revenue agent needed, among other things, executed Forms 2848 for Stone Canyon, the LLC, and the S corporation. The revenue agent

---

[12] The general three-year periods of limitations under secs. 6229(a) and 6501(a) had both expired.

received the POA's letter but decided not to respond to it.[13]  The following month, though, the revenue agent mailed the POA finalized audit reports making adjustments at the individual level.

In April 2005 the IRS issued an FPAA and a notice of deficiency separated by only 11 days.[14]  The IRS disallowed the $17 million loss deduction for 1999 in the FPAA and in the notice of deficiency, the former at the partnership level and the latter at the individual level.  The IRS knew or should have known that it was not proper to disallow this exact same loss deduction in both notices.  See H.R. Conf. Rept. No. 97-760, supra at 611, 1982-2 C.B. at 668.  In August 2005 the IRS assessed, and the Bedrosians paid, more than $4 million in tax and interest as a result of the $17 million loss deduction adjustment.

On October 19, 2006, at a hearing over which I presided, I asked respondent's counsel why the IRS had issued a notice of deficiency 11 days after it had issued an FPAA.  Respondent's counsel offered three reasons.  First, the $17 million loss was incurred at the level of the S corporation and not the partnership.

---

[13]  The POA's letter was stamped "received" on February 22, 2005, by the IRS office in which the revenue agent worked.

[14]  Both notices were actually drafted on the same day.

Second, the characterization of the transaction fees was not clear. And the third reason offered by respondent's counsel was as follows:

> I think significantly, Your Honor, on the taxpayers' 1065, Form 1065, Schedule B, Question 4, 'Is this partnership subject to the consolidated audit procedures of Section 6221 through 6233?' Answer, 'No.' They put on their return that they weren't subject to the TEFRA procedures.

So it seemed, at least in part, that the IRS followed both procedures in the audit because it was not clear, on the basis of Stone Canyon's partnership return, which of the procedures was the correct one.

At a September 21, 2010, hearing before Chief Special Trial Judge Peter J. Panuthos, counsel for respondent made this point explicitly clear:

> The difficulty with the situation as the Service saw it was that the partnership return, on the partnership return when asked if this was a TEFRA partnership it had been marked no this was not a TEFRA partnership. Therefore, given the fact that also there was a TMP appointed, the Service did not quite have a complete handle on whether or not this was a TEFRA partnership, so they are caught between a rock and a hard place.

Then on September 20, 2012, in respondent's objection to Chief Special Trial Judge Panuthos' recommended findings of fact and conclusions of law, respondent's counsel once again affirmed:

> Respondent was unsure at the time the notice of deficiency was issued, whether the partnership was subject to the Code's TEFRA partnership procedures and, if subject to the TEFRA procedures,

whether certain items would be regarded by the Court as partnership items or affected items. Indeed, Mr. Bedrosian signed the partnership's Form 1065, on which a box was checked stating that the partnership was not subject to the TEFRA partnership procedures.

After the Court brought section 6231(g)(2) to the parties' attention, respondent changed his position. The uncertainties surrounding Stone Canyon's partnership return disappeared. On brief, respondent explained his new position as follows:

> [S]ince the information reported on the partnership return shows that both partners in the partnership were pass-thru partners, the small partnership exception does not apply to the partnership. Therefore, based on the partnership return, * * * [the IRS] could have reasonably determined only that the partnership was subject to the TEFRA partnership provisions.

Stone Canyon's representation that it was not subject to the TEFRA procedures no longer seemed to matter. In fact, respondent suggested on brief that the IRS might not have even considered it:

> The statement on the subject partnership return that the partnership taxable year is not subject to the TEFRA procedures cannot, in context, serve as evidence that * * * [the IRS] made a reasonable determination, on the basis of the partnership return, that the TEFRA procedures do not apply. While * * * [the IRS] could have considered such a statement in making * * * [its] determination, there is no authority for binding * * * [the IRS] to such a statement when the partnership return also provided a statement that there was at least one pass-thru partner.

Then, in respondent's response to petitioners' allegations of fraud (i.e., respondent's apology to the Court), respondent made the bold claim:

Respondent has consistently taken the position that * * * [the] Stone Canyon Partnership is subject to the TEFRA provisions of the Code.

Needless to say, respondent's claim is simply not true.

In short, the IRS has been less than open and candid with both the Bedrosians and this Court. The opinion of the Court concludes that the IRS' conduct has no bearing on the outcome of this case. The opinion of the Court contends that "the Schedules K-1 that were included with and are part of the partnership return make it clear that the partnership must have been subject to TEFRA as a matter of law" and that "the only reasonable conclusion is that TEFRA applies to Stone Canyon." See op. Ct. pp. 47-48. I respectfully disagree.

I do not believe the opinion of the Court's bright-line test is appropriate. The opinion of the Court seems to mistakenly equate the term "reasonable" with the term "correct". If every incorrect determination were also found to be unreasonable, then section 6231(g)(2) would serve no purpose. Section 6231(g)(2), by its terms, applies only if a determination is both incorrect and reasonable. I believe the question of reasonableness is most appropriately determined under all of the facts and circumstances. See, e.g., Pac. Grains, Inc. v. Commissioner, 399 F.2d 603, 606 (9th Cir. 1968) (stating that the reasonableness of compensation is a question of fact to be determined on the basis of all the facts

and circumstances), aff'g T.C. Memo. 1967-7; Patel v. Commissioner, 138 T.C.

395, 417 (2012) (stating that reasonable cause and good faith are determined on a

case-by-case basis, taking into account all pertinent facts and circumstances);

Price v. Commissioner, 102 T.C. 660, 662 (1994) (stating that for purposes of an

award of litigation costs, the determination of the reasonableness of the

Commissioner's position is based on all the facts and circumstances), aff'd

without published opinion sub nom. TSA/Stanford Assocs., Inc. v. Commissioner,

77 F.3d 490 (9th Cir. 1996); Montgomery v. Commissioner, 65 T.C. 511, 519

(1975) (stating that the existence of a reasonable prospect of recovery depends on

the facts and circumstances); Carithers-Wallace-Courtenay v. Commissioner, 5

T.C. 942, 945 (1945) (stating that the reasonableness of an addition for a bad debt

reserve depends upon the facts and circumstances); EMI Corp v. Commissioner,

T.C. Memo. 1985-386 (stating that whether a corporation's accumulation of

earnings for a contingent liability is reasonable depends upon all the facts and

circumstances).

When I look at all of the facts and circumstances of this case, there is no

question in my mind that a determination to apply the normal deficiency

procedures on the basis of Stone Canyon's return would be reasonable. The

information on Stone Canyon's Form 1065, U.S. Partnership Return of Income,

for 1999, including the attached Schedules K-1, was confusing and contradictory. As even the opinion of the Court points out, the return "contained conflicting, and necessarily erroneous information." See op. Ct. p. 47.

Stone Canyon expressly reported that it was not subject to the TEFRA procedures, and yet it designated a TMP, which exists only in the world of TEFRA partnerships. Stone Canyon attached a Schedule K-1 to its return listing an LLC as one of its partners. However, Stone Canyon identified the LLC as an "INDIVIDUAL", which would not be a passthrough partner. See sec. 6231(a)(9). The opinion of the Court brushes aside these inconsistencies and places all of its reliance on a second Schedule K-1 in which Stone Canyon identified its other partner as an "S CORPORATION". How could one know, looking solely at the partnership return, whether this information was not also incorrect?

The information on Stone Canyon's return was plainly unreliable. I fail to see why Stone Canyon's representation that it was not subject to TEFRA is any less credible, and entitled to any less reliance, than the other information on the return. The statements respondent's counsel made to this Court in 2006, 2010, and 2012 clearly indicate that the IRS relied on Stone Canyon's representation. To impose upon the IRS an affirmative duty to seek out additional information from Stone Canyon or its partners for the sole purpose of discerning what information

on the return was correct so that the IRS could apply the correct procedures in the audit would undercut the very purpose of section 6231(g). I believe that it would be reasonable for the IRS to apply either the normal deficiency procedures or the TEFRA procedures on the basis of the return.

My conclusion is bolstered by the Court of Appeals for the Seventh Circuit's opinion in Cole v. Commissioner, 637 F.3d 767 (7th Cir. 2011), aff'g T.C. Memo. 2010-31. In that case, the taxpayer husband incorrectly represented on a Form 1065 that an LLC (taxed as a partnership) owned by him, his wife, and his wife's family trust was not subject to the TEFRA procedures.[15] Id. at 770, 779. The taxpayers argued on appeal that the Tax Court erred in taking jurisdiction over the items originating from the LLC because the IRS failed to apply the TEFRA procedures to the LLC. Id. at 779. The Court of Appeals summarily dismissed the taxpayers' argument, finding that the taxpayers' attempt to raise TEFRA, when the taxpayer husband expressly stated that the LLC was not subject to TEFRA, was "misguided". Id.

---

[15] A trust, like an S corporation, is a passthrough partner. See sec. 6231(a)(9).

### 3.    Whether Section 6231(g)(2) Confers Jurisdiction

I would find that all three requirements of section 6231(g)(2) have been met in this case:  (1) the IRS made a determination to follow the normal deficiency procedures on the basis of Stone Canyon's return; (2) it was reasonable for the IRS to do so; and (3) the determination turned out to be erroneous.  Where, as here, the requirements of the statute are met, "the provisions of this subchapter shall not apply to such partnership (and its items) for such taxable year or to partners of such partnership".  The statute should be construed to mean exactly what it says and the conclusion here should be:  The TEFRA procedures do not apply to Stone Canyon and its partners for 1999.  See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-254 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

Consequently, Stone Canyon would be treated as though it were subject solely to the normal deficiency procedures for 1999.  Therefore, there would be no distinction between partnership items, nonpartnership items, and affected items of Stone Canyon.  See sec. 6231(a)(3), (4) and (5).  Nor would any items of Stone Canyon be properly determinable in a partnership-level proceeding.  See sec. 6221.  Instead, all items of Stone Canyon would be taken into account by the partners of Stone Canyon in accordance with their distributive shares, see secs.

701-704, and would be properly determinable on a partner-by-partner basis at the individual level, <u>see</u> sec. 6212. And that is exactly how the IRS audited and adjusted Stone Canyon's items in this case. I would hold that this Court has jurisdiction over all of the items in the notice of deficiency through the application of section 6231(g)(2).

III.    <u>Conclusion</u>

The IRS' conduct in this case led both the Bedrosians and this Court down the wrong path. This Division of the Court issued the opinion in this case and the two related cases. At the time we knew little of what happened during the audit. There had never been a trial in this case. Fortunately, neither the law of the case doctrine nor any other judicial doctrine of which I am aware prevents this Court from reaching the right result in the end. I do not know whether the Bedrosians are entitled to any of the loss deductions they claimed, but I wholeheartedly believe they are entitled to their day in court to make their case.

Judge Halpern writes in his concurring opinion that the Bedrosians missed their opportunity to have their day in court by failing to timely petition in response to the FPAA. <u>See</u> Halpern op. pp. 56-57. Judge Halpern overlooks the fact that the IRS led the Bedrosians to believe that the April 19, 2005, notice of deficiency, in response to which they filed a timely petition, was the appropriate notice. It is

the IRS, and not the taxpayer, that chooses audit procedures. In this case, the IRS chose the normal deficiency procedures and applied those procedures, and only those procedures, for approximately a year and a half. But at that late stage of the audit, the IRS changed course in an attempt to gain an unfair advantage over the Bedrosians. The IRS began a partnership-level audit, allegedly to disallow NOL carryforward deductions on the Bedrosians' Form 1040 for 2000, and told the Bedrosians' POA that said audit would be "opened and shut". All the while, the IRS continued to examine Stone Canyon at the individual level until the very last day of the audit. I would hold that section 6231(g)(2) applies to treat this case exactly as the IRS treated it from the outset--as an individual deficiency case.

Because the interests of substantial justice so require, I respectfully dissent.

THORNTON, COLVIN, and FOLEY, JJ., agree with this dissent.